James J. Conroy, J.
This is an application by a landlord under article 78 of the Civil Practice Act to review and annul an order of the respondent which vacated an order of the Local Bent Administrator granting to petitioner an increase in maximum rent.
The application is based upon three grounds: (1) that more than 33 days elapsed from the date of the issuance of the order by the Local Bent Administrator and the filing of the protest by the tenant; (2) that more than 90 days elapsed between the filing of the protest and the issuance of respondent’s order; and (3) that the tenant accepted and is obtaining the benefit of the increased services.
The first two grounds are without merit. Subdivision 2 of section 92 of the State Bent and Eviction Begulations (hereinafter referred to as the State Bent Begulations) provides, in *252 pertinent part, that “ A protest served by mail, postmarked not more than thirty-three days after the date of such order, shall be compliance with this paragraph.” (See, also, New York City Bent, Eviction and Rehabilitation Regulations, § 92, subd. b, eff. May 1, 1962, and hereinafter referred to as the City Rent Regulations.) The order of the Local Rent Administrator was issued on December 28,1961, and the envelope in which the protest was mailed is postmarked January 30, 1962, or exactly 33 days later and thus timely within the just-quoted regulation.
Respondent’s determination of the protest by order issued on June 8, 1962, was also timely. True, under subdivision 1 of section 101 of the State Rent Regulations (see, also, City Rent Regulations, § 100, subd. a), a protest is to be deemed denied unless finally determined within 90 days after filing or within such extended period as may be fixed by the Administrator with the consent of the party filing the protest. But subdivision b of section 118 of the City Rent Regulations provides that ‘ ‘ Any protest filed against an order of the State Rent Commission which may be undetermined on April 30, 1962 shall for the purposes of Section 100(a) of these Regulations be deemed to have been filed on May 1, 1962.” The effect of that provision was to extend to July 31, 1962, respondent’s time within which to decide protests which had not been determined before May 1, 1962. Furthermore, the 90-day period within which to decide protests has been held to be directory rather than a Statute of Limitations. (Korniczky v. Gabel, N. Y. L. J., Nov. 2, 1962, p. 15, col. 5.)
The third ground of petitioner’s application, however, merits more extended inquiry.
The facts, as they appear from the record before the court, are as follows: By application sworn to on September 20,1961, petitioner applied for an increase in the maximum monthly rent for apartment 1A from $57.50 to $61.50 on the ground that he had installed in that apartment a new 10-cubic-foot refrigerator to replace the old one. That application was enclosed in a letter to the local rent office, dated October 20, 1961, by petitioner’s attorney, in which he wrote in part as follows: “ Kindly note that this application has not been signed by the tenant. The tenant agreed to have the landlord install a new refrigerator and pay the increase when it was installed; however, after the installation of the new refrigerator the tenant refused to pay the increased amount.”
On November 15, 1961, the Local Rent Administrator mailed to the tenant a form notice of commencement of proceeding for *253 increase of maximum rent. So far as appears, the tenant did not respond.
By order dated December 28,1961, petitioner’s application for an increase in maximum rent was granted. On January 29,1962, the Local Rent Administrator mailed to Mrs. Sucich, the tenant’s wife, a form notice of rejection of application for reconsideration which she had submitted to that office on January 3, 1962.
In his protest, Nicholas Sucich, as tenant, stated that: ‘ ‘ My landlord was told that my refrigerator was broken and I told him I wanted it repaired. He said it couldn’t be repaired so I told him to supply me with a used one and that I did not want a new one. I never signed any consent agreement for the new refrigerator he installed. I then get a notice from the Local Rent Office in Queens that my rent was raised from $57.50 to $61.50.” By order dated February 1, 1962, that protest was rejected for the tenant’s failure to comply with the requirements of sections 95 and 96 of the State Rent Regulations to the extent indicated in the items checked, with leave to the tenant to refile within 15 days from the date of that order, which was done. The substance of the refiled protest was the same.
In his answer, sworn to on February 15, 1962, the landlord wrote as follows: “ Some time in July, 1961, the tenant’s refrigerator went out of order. I had a repairman look at it to see whether it could be repaired and he advised me that it would be advisable to go out and get a used refrigerator in good working order rather than repair this one. I told the tenant’s wife the facts and asked her if she would rather have a used one in good working order or a new one. I explained to her that if she decided on a new one, there would be an increase in rent in accordance with the rules of the Local Rent Office. She agreed to take the new one. It will be noted that while it was explained to her that there would be an increase in rent if she took the new box and while such fact is common knowledge, she made no complaint when the new box was delivered and installed but only much later when she knew that I could not cancel the order for the new refrigerator and that it would be a hardship to take it out. I certainly would not have spent considerable money on a new box if I had any idea she did not want it. If she changed her mind about paying the increase, she should have told me when or before the box was delivered, not now. ’ ’
In support of that answer to the tenant’s protest, petitioner’s attorney submitted an affidavit in which he wrote as follows: “ At the time that the tenant’s refrigerator went out of order, as stated in Landlord’s answer, Mrs. Sucich, the tenant’s wife. *254 telephoned me and explained that she was having some difficulty in communicating with the landlord, that she knew that I was his attorney and she asked me if I would try to reach him and explain that she needed the refrigerator right away since the weather was hot. I told her I would see what I could do. When I communicated with the Landlord, he told me that he already had a repairmen [sic] to look at the refrigerator who told him that it would not be worth while to get this refrigerator repaired but would be advisable to get a good used one or a new one if this is what the tenant would want. I then called the tenant’s wife and explained the circumstances. At this time, she told me that she agreed to getting a new refrigerator. I told her that depending on the size that she would want, the increase would be about three or four dollars. She said that would be alright [sic]. Although, the tenant’s wife knew that a new refrigerator would mean an increase, she never called me to object when the new refrigerator was delivered but only considerable time later did she state that she would not consent to an increase. Apparently she realized then that it would be impractical to take the new box out.”
The protest was granted, the respondent writing in pertinent part as follows: “Under Section 33.1(a), which is applicable hereto, no increase is warranted unless the landlord and tenant by ‘ mutual voluntary written agreement ’ agreed to the installation of the new refrigerator 1 or the tenant has accepted and is obtaining the benefit ’ of it. However, there was no written agreement and it appears from the credible evidence in the record that the tenant merely requested the maintenance of refrigerator service, which landlord was obligated to do by either repairing the refrigerator then in the subject accommodation or replacing it with a properly functioning used refrigerator. If the landlord, instead, elected to install a new refrigerator without the tenant’s consent, the tenant is not obligated to pay for it.” It is the opinion of this court that respondent’s determination was arbitrary and contrary to law. As correctly stated by respondent, subdivision 1 of section 33 of the State Bent Begulations provides that:
“ The Administrator may grant an appropriate adjustment of a maximum rent where he finds that:
“ a. The landlord and tenant by mutual voluntary written agreement, subject to the approval of the Administrator, agree to a substantial increase in dwelling space or an increase in the services, furniture, furnishings or equipment provided in the housing accommodations; or the tenant has accepted and is *255 obtaining the benefit of increased services, furniture, furnishings or equipment ’ ’.
As would be expected, all of the conversations for the replacement of the old refrigerator were had with the tenant’s wife and not one word from her appears in this record. Such being the case, the version of those conversations as set forth by the petitioner and his attorney stands uncontradicted. Accordingly, the conclusion seems inescapable that ‘ ‘ the tenant has accepted and is obtaining the benefit of increased services * * * or equipment ” (State Rent Regulations, § 33, subd. 1, par. a).
The two cases mainly relied upon by the respondent do not require a contrary result. In Matter of Lian v. Weaver (8 Misc 2d 142) the court noted: “ It is conceded that these tenants did not consent to the installation of said new refrigerators ”, a concession which is absent in the instant case; and in Matter of Rosdniw Co. v. Temporary State Housing Rent Comm. (205 Misc. 665, 666), it appears that the installation of new refrigerators in lieu of obtaining alternating adapters for the old units “ was a deviation from the original plan made known to the tenants ” and that a prior application for an increase in rent because of the installation of the new refrigerators had been denied. In neither case, so far as appears, was the tenant permitted to elect to receive a used, operating refrigerator with no increase in rent or a new refrigerator with an appropriate increase. The tenant in the instant case was given such election.
Accordingly, the petition is granted and respondent’s order is annulled.