Harold Tessler, J.
This article 78 proceeding seeks to review and thereupon annul the determination of the City Rent and Rehabilitation Administrator who by order dated July 5, 1962, revoked certain rent increases which had been granted by the Local Rent Administrator of the State Rent Administration on June 15, 1961.
On July 27, 1960, petitioner landlord applied, pursuant to subdivision 5 of section 33 of the State Rent and Eviction Regulations, for increases in the maximum rent of 120 apartments in the subject building on the ground that such increases were necessary to provide the allowable 6% net annual return based on the current assessed valuation of $785,000. The Local Rent Administrator found that the current assessed valuation of $785,000, equalized at the 1954 equalization rate of 85% was *95 $923,529.41 and that 6% of that sum was $55,411.76. Since the landlord’s net income in the test year ending June 30, 1960, amounted to $49,099.22, a rent adjustment of $6,312.54 was required to provide the allowable annual net return of 6%. Thereafter, a physical inspection of the premises was conducted, the report of which noted that the building-wide services were being adequately maintained, but that certain specified repairs were required in 15 apartments. It appears from the record that the landlord completed these required repairs, filed an affidavit of compliance and on June 15, 1961, as already noted (almost one year after the filing of the application) the Local Bent Administrator issued orders increasing each of the maximum rents of 87 apartments, effective as of that date.
Four protests were filed by the tenants from the aforementioned orders. Of these four protests, three were filed specifically by the tenants of apartments 2W, 3M and 5C; the fourth protest was filed on behalf of “ various other tenants ” by the attorney for the tenants’ group. None of these tenants is specifically identified anywhere in the record by either name or apartment number. It is to be noted that section 93 of the regulations requires that the name and post-office address of the tenant or representative filing the protest be given. The protesting tenants claim that essential services were not being maintained; that the afore-mentioned rent increases granted were unfair because other apartments were not increased; and that the landlord’s claimed payroll expense was not accurate.
On February 26, 1962, the State Bent Administrator issued an order remanding the proceeding to the local rent office, which order was revoked by him three days later, on March 1, 1962, upon a finding that said order had been erroneously issued on the assumption that the current equalized assessed valuation was used at the audit as the landlord’s basis of eligibility for the rent increase.
At this point it is to be noted that on May 1, 1962, the regulation and control of residential rents and evictions within the City of New York was transferred from the Temporary State Bent Commission to the City Bent and Behabilitation Administration, pursuant to chapter 21 of the Laws of 1962.
Section 33.5 of the City Bent, Eviction and Behabilitation Begulations, effective May 1, 1962, provides that the landlord’s basis of eligibility for an increase shall be the assessed valuation in effect at the time the application for such increase was filed, without application of the equalization rates.
By order dated July 5, 1962 (almost two years after the filing of the original application) the City Bent and Behabilitation *96 Administrator found that all of the tenants’ protests were without substance and denied the same. Nevertheless, the order further provided that all 87 orders of increase issued by the Local Bent Administrator (State), dated June 15, 1961, should be cancelled as of July 5,1962. The respondent applied de novo the new section 33.5 of the regulations, finding that the landlord earned an amount exceeding 6% during the test year and, consequently, no rent adjustment was required. The respondent stated that ‘ ‘ Section 118 of the City Bent, Eviction and Behabilitation Begulations requires that all protests pending on May 1, 1962, be determined in conformity with the provisions of the City Begulations. Therefore, since the instant protests were pending on May 1, 1962, they are being determined pursuant to the provisions of Section 33.5 of the City Bent, Eviction and Behabilitation Begulations. ’ ’
Petitioner contends, among other things, that the Administrator was without jurisdiction when she revoked the Local Bent Administrator’s orders after denying the tenants’ protests. Bespondent, on the other hand, maintains that she acted in conformity with the regulations then effective and was authorized, in the present posture of the protests, to consider the latter de novo and to apply the law and regulations then in effect.
In the court’s opinion the respondent’s application of section 118 of the regulations constitutes such a reaching as to result in an act entirely beyond the authority intended to be given the respondent by the above-mentioned section. There is nothing in section 118 that permits its application in such a manner as to warrant the de novo consideration of each and every prior act of the State Bent Administrator, whether or not the latter’s prior determinations are at issue in the protests then pending. It is my view that when the respondent denied the tenants’ protests, by order of July 5,1962 — and of necessity this denial had to occur before the “ act ” of revocation— that was the end of the matter, leaving nothing else for the respondent to take any additional action upon. The sole issue for determination before the respondent from the very beginning of the protest proceeding was the correctness or incorrectness of the adjustment (increase) orders issued June 15, 1961; in effect it was the responsibility of the respondent to determine whether those orders when issued were consistent and in conformity with the regulations and the law as it then existed. By its denial of the tenants’ protests the respondent determined that the above-mentioned orders were correct and in conformity with the regulations.
Section 11 of chapter 21 of the Laws of 1962 (State Enabling Act) and section Y41-14.0 of the City Bent and Behabilitation *97 Law (Administrative Code of City of New York, § Y41-14.0) provide that pending matters “ shall be transferred to, conducted by, and completed or determined by the city housing rent agency. In discharging such responsibilities the city housing rent agency shall act in conformity with the provisions of the state emergency housing rent control law, and the rules and regulations promulgated thereunder, governing such matters, applications or proceedings, unless at the time such action is taken, such state law, and the rules and regulations promulgated thereunder, have been amended or superseded by local laws, ordinances, rules or regulations adopted pursuant to subdivision five of this section, and in such event, in conformity therewith to the extent such local laws, ordinances, rules or regulations are made expressly applicable to such matters, applications or proceedings.”
The City Rent and Rehabilitation Law also provides, in pertinent part, as follows:
“ § Y41-5.0 General powers and duties of the city rent and rehabilitation administration.— a. At the time this title shall become effective, the city rent agency shall establish maximum rents which, subject to the provisions of subdivision b of this section, shall be the maximum rents in effect on April thirtieth, nineteen hundred sixty-two pursuant to the state rent act and the regulations thereunder.
“ b. Such agency, to effectuate the purposes of this title, and in accordance with the standards set forth in paragraph (2) of subdivision c of this section, may set aside and correct any maximum rent resulting from illegality, irregularity in vital matters or fraud, occurring prior to or after May first, nineteen hundred sixty-two. ’ ’
The regulations promulgated pursuant to the above provide in section 103 thereof that upon protest, the Administrator may ‘ ‘ modify, supersede or revoke any order issued by him under these Regulations, or any order issued under previous Regulations, where he finds that such order was the result of illegality, irregularity in vital matters, or fraud.” Section 118 provides that as to those proceedings pending before the State Rent Commission, the City Rent and Rehabilitation Administrator shall complete the same ‘ ‘ pursuant to and in conformity with the provisions of the Rent Law and these Regulations governing such matters, applications, proceedings or protests.”
Nowhere in the entire proceeding is there an allegation of ‘ ‘ illegality, irregularity in vital matters, or fraud occurring prior to or after May 1,1962.”
*98 Belying upon Matter of Yasser v. McGoldrick (282 App. Div. 1056, affd. 306 N. Y. 924), it is respondent’s position that the Administrator may reconsider his determination de novo upon the protests and may then make his determination in conformity with the law in effect at that time. It is also respondent’s contention that the three I. L. F. Y. Co. cases (I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263; I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 11 N Y 2d 259; I. L. F. Y. Co. v. City Rent & Rehabilitation Administration, 11 N Y 2d 480) permit the application of the current law to the pending protests.
In the opinion of the court neither Matter of Yasser (supra) nor the three I. L. F. Y. Co. eases (supra) are applicable to the facts present in the instant case. Matter of Yasser (supra) was concerned with the propriety of a State Bent Administrator’s revocation of his prior determination with respect to a denial of a certificate of eviction. There the Court of Appeals held that the State Bent Administrator had authority to reconsider the matter de novo on remission by the Supreme Court and that in the absence of new evidence, he may, nevertheless, revoke his prior determination. The court was not there concerned with the applicability of a change in the substantive law. In the three I. L. F. Y. Co. cases (supra) the petitioning landlord sought relief where orders had not yet been issued at any level but rather applications for increases were then pending when the change of law went into effect. There the court repeatedly held that the landlord 1 ‘ did not have in any particular rule an interest so vested as to entitle it to keep the rule unchanged ”.
In the instant case, however, 87 orders had been issued by the Local Bent Administrator from which only four protests were taken. Bespondent, after denying the four protests on the merits, nevertheless revoked all 87 orders of the Local Bent Administrator. This, respondent had no authority to do, in the absence of a showing of “illegality, irregularity in vital matters or fraud (Administrative Code of City of New York, § Y41-5.0.)
As previously noted, of these four protests only three were filed by specific and identifiable tenants — the fourth was on behalf of “various others ”, the exact number or identity of which being unknown. It seems apparent that the term “various tenants” does not include all of the remaining 84, nor can we ascertain which of the 84 it seeks to represent. Were it to be assumed that the respondent’s act of revocation was proper, it is the court’s view that the revocation could be appli *99 cable only to the orders adjusting the rents of the three specific protestants, namely, the tenants of apartments 2W, 3M and 50. The respondent, in any event, could determine the validity of only such orders from which valid protests were taken. The loose form of the fourth protest, as filed by the attorney on behalf of ‘6 various tenants ’ ’ does not satisfy the requirements of the regulations and, in effect, does not constitute a properly filed and valid protest. Absent such valid protests being filed, the respondent had neither the jurisdiction nor the authority to revoke the adjustment of rent orders affecting the remaining 84 tenants, since there were no protests “pending on May 1, 1962 ” before her. (Rent, Eviction and Rehabilitation Regulations, § 118.)
Were respondent’s argument, that she had the right to consider the matter de novo and apply section 118 as she has done in this case, to prevail, the conclusion must follow that she would have the right to cancel any and all orders of rent adustment issued since the commencement of rent control, which orders were based on an equalized assessed valuation. I cannot accept this, and I believe that it is hardly consistent with the State Enabling Act (L. 1962, ch. 21) and the City Rent and Rehabilitation Law (Administrative Code, ch. 41, tit. Y).
While the petitioner is not ‘ ‘ constitutionally guaranteed ’ ’ an increase based upon the assessed valuation as equalized by the 1954 rates, it cannot be deprived of such increase once the same has been validly granted.
The court cannot close its eyes to the inequity of the respondent’s action herein which becomes glaringly evident when we consider the almost interminable delays attendant upon the administrative processes before a final determination and disposition was arrived at (in this case almost one year elapsed from the filing of the original application to the issuance of the orders of adjustment and approximately two years from the original filing to the final disposition of the proceeding by the denial of the tenants’ protests). This delay was in no way due to any fault on the part of either the landlord petitioner or the tenants, but obviously to the built-in problems and deficiencies inherent in the very serviceable political football known as rent control. This extracurricular and omnipresent monster of delay is, in effect, responsible for the existent situation, and, in the court’s opinion, it would be a grievous inequity to permit its influence to be felt under all of the existing facts and circumstances.
I conclude that the adjustment (increase) orders of the Local Rent Administrator, dated June 15, 1961, were correct when *100 made and should be reinstated and the revocation by the respondent of the rent adjustments as established in those orders is arbitrary and capricious and contrary to law.
Accordingly, petitioner’s application is granted to the extent of annulling that part of the order dated July 5, 1962, which cancelled the orders issued by the Local Bent Administrator dated June 15, 1961. The matter is remanded to the District Bent and Behabilitation Director for the purpose of reinstating the June 15, 1961, orders insofar as they increased the various maximum rents, said orders to be effective as of that date.