Louis J. Capozzoli, J.
This is an application by the landlord, under article 78 of the Civil Practice Act, which seeks to set aside a protest order issued by the City Rent and Rehabilitation Administrator, which had affirmed an order of the Local State Rent Administrator, increasing rents under the hardship formula, but which protest order revoked, prospectively, the rent increases granted by the local order.
The subject premises were purchased by the petitioner landlord on February 6, 1961. On March 20, 1961, the petitioner made an application for complete wide maximum rent increases to obtain what it regarded as a fair return. On February 6, 1962, the Local Rent Administrator made an order fixing the maximum rents. Various tenants protested this order and, while the protests were pending, and on May 1, 1962, control of residential rents was transferred from the State to the city. The City Rent Administrator denied the protests on July 30, 1962, in an opinion, which stated in part: ‘ ‘ After a careful consideration of the entire record, the Administrator is of the opinion that these protests should be denied but that the rent increases order by the Local Rent Administrator on February 6th with respect to all the housing accommodations in the subject premises, should be canceled as of the date of this order.”
In this proceeding the petitioner seeks an order of this court expunging that part of the order under review which cancelled the rent increases.
By a separate article 78 proceeding the petitioner tenant urges that the protest raised but one issue, whether the Local Rent Administrator, in order to determine whether the landlord was making a fair return on the property, properly used the rent purchase price of the property as the basis of value in place of the equalized assessed valuation.
*220 The petitioner landlord asserts that the sole issue for determination is whether, as a matter of law, the respondent had the power to rule back, on July 30, 1962, rents which were concededly valid on April 30, 1962, since the respondent found that no reason existed to question the validity of those rents.
In implementation of the Local Emergency Housing Bent Control Act (L. 1962, ch. 21) the City Bent Law (Local Laws, 1962, No. 20 of City of New York) was adopted. The latter provides in subdivision a of section Y41-5.0 of the Administrative Code of the City of New York: “ At the time this title shall become effective, the city rent agency shall establish maximum rents which, subject to the provisions of subdivision b of this section, shall be the maximum rents in effect on April thirtieth, nineteen hundred and sixty-two pursuant to the state rent act and the regulations thereunder.” The enabling act (L. 1962, ch. 21) made provisions as follows: “ 11. Transfer of certain pending matters. Except as provided in subdivision thirteen of this section, any matter, application, proceeding or protest undertaken, filed or commenced by, with or before the temporary state housing rent commission or the state rent administrator relating to the regulation and control [of] residential rents and evictions within a city having a population of one million or more and pending on May first, nineteen hundred sixty-two, shall be transferred to, conducted by, and completed or determined by the city housing rent agency. In discharging such responsibilities the city housing rent agency shall act in conformity with the provisions of the state emergency housing rent control law, and the rules and regulations promulgated thereunder, governing such matters, applications or proceedings, unless at the time such action is taken, such state law, and the rules and regulations promulgated thereunder, have been amended or superseded by local laws, ordinances, rules or regulations adopted pursuant to subdivision five of this section, and in such event, in conformity therewith to the extent such local law, ordinances, rules or regulations are made expressly applicable to such matters, applications or'proceedings. ” The State Emergency Housing Bent Control Law remains in effect save to the extent that it is superseded by the local law. The local law in subdivision a of section Y41-14.0 similarly provides as follows: “Except as provided in section Y41-15.0 of this title, and subject to the provisions of subdivision b of this section, any matter, application, proceeding or protest undertaken, filed or commenced by, with or before the state rent commission or the state rent administrator relating to the regulation and *221 control of residential rents and evictions within the city and ■pending on May first, nineteen hundred sixty-two, shall be .transferred to, conducted by, and completed or determined by the city rent agency. In discharging such responsibilities, the city rent agency shall act and shall determine and complete any such matter, application, proceeding or protest pursuant to and in conformity with the provisions of this title and the rules and regulations thereunder governing such matters, applications, proceedings or protests.” There is no provision in the enabling act in the local law or in the rules and regulations called to the attention of the court which makes any of the provisions of the local law or the rules and regulations “ expressly applicable ” in the consideration of matters pending on May 1,1962.
On the protest the matter was fully considered de novo and the respondent came to the conclusion that the landlord’s application had been properly processed, and that the contentions raised by the tenants on the protest were without merit. The order of the Local Administrator was held to be valid and it was sustained. It was concluded, however, that the rent increase orders should be cancelled as of the date of the order under review, July 30, 1962, rather than as of May 1, 1962, for the reason that at the time of decision the petitioner landlord was not eligible to apply for a rent increase under the local law, and the order of cancellation could not be retroactive.
Apart from the fact that there is no provision of law which makes “expressly applicable” to matters pending on May 1, 1962, the provision of the local rent law, or the rules and regulations promulgated pursuant thereto, the question remains whether the landlord petitioner possessed an interest so vested as to entitle it to keep the rule unchanged.
The case of Matter of Streg, Inc. v. Gabel (39 Misc 2d 93, 96) seems to be dispositive of the issues raised in the case at bar. Similar questions were raised before Mr. Justice Tesslbe in the cited case and he said in his opinion: “It is my view that when the respondent denied the tenants’ protests, by order of July 5, 1962 — and of necessity this denial had to occur before the ‘ act ’ of revocation — that was the end of the matter, leaving nothing else for the respondent to take any additional action upon. The sole issue for determination before the respondent from the very beginning of the protest proceeding was the correctness or incorrectness of the adjustment (increase) orders issued June 15, 1961; in effect it was the responsibility of the respondent to determine whether those orders when issued were consistent and in conformity with the regulations and the *222 law as it then existed. By its denial of the tenants’ protests the respondent determined that the above-mentioned orders were correct and in conformity with the regulations. ’ ’
This court fully agrees with the thoughts expressed by Mr. Justice Tessler in the Streg case and, on the strength of the reasoning contained therein, will grant the application of the landlord petitioner.
The court has examined the case of Menro Realty Corp. v. Gabel (N. Y. L. J., Nov. 23, 1962, p. 14, col. 2) and concludes that the holding in the latter case is not necessarily in conflict with the holding in the Streg case, because in the former the question of fraud on the part of the landlord entered into the picture and thereby clouded the issue.
For the reasons above stated, the application of the landlord petitioner is granted and that of the tenant is denied.