Per Curiam.

The instant case involves not merely an interpretation of >an apparently ambiguous provision of the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (adopted pursuant to the authority of the Rent Stabilization Law of 1969, Local Laws, 1969, No. 16 of City of New York; Administrative Code of City of New York, § YY511.0 et seq.), but also a consideration of the jurisdiction, power and authority of the Conciliation and Appeals Board (“ CAB ”) established pursuant to the Rent Stabilization Law of 1969 (“RSL”).
Subsequent to May 31, 1968, appellant landlord leased a decontrolled apartment in a multiple dwelling in New York County to respondent tenant for a two-year term. Following enactment of the Rent Stabilization Law of 1969 and the approval and promulgation of the afore-mentioned Industry Code, appellant tendered to respondent an extension of his lease to three years at a monthly rate 25% above the rent charged for the premises on May 31, 1968, which proposed lease contained an option to cancel after two years from the commencement of the original term. Respondent refused this offer and petitioner commenced a nonpayment proceeding.
*508 The appellant landlord contends that pursuant to subdivision A of section 20 of the Industry Code it has the absolute right to demand an extension of the existing lease to a three-year term, with a 25% increase over the rent obtaining on May 31, 1968 provided the extended lease affords the tenant the right to cancel after two years. In resisting the proceeding, respondent tenant contends that the landlord is bound by the two-year term of the original lease and is only entitled to an increase of 15% over the rent obtaining on May 31, 1969.
Upon the proceedings below, the landlord submitted a letter from the counsel to the Rent Stabilization Association supporting landlord’s interpretation of subdivision A of section 20 of the Industry Code. Tenant, on the other hand, submitted a copy of a pamphlet published by the New York City Housing and Development Administration (“ HDA ”), entitled “ Understanding Your Rights As a Tenant Under The New Rent Stabilization Law ’ ’, which recites that, “ if a vacancy lease was made between June 1, 1968 and July 11, 1969 [the date the Industry Code was formally approved by HDA pursuant to RSL, § YY51-6.0] for less than three years, the owner may collect up to the maximum allowable for a three-year vacancy lease (25%) provided, with the tencmt’s consent, the owner extends the lease to a three-year lease. The tenant whose lease is so extended must be given the right to cancel the lease at the end of the original term.” (Emphasis supplied.)
The tenant also submitted a letter from the office of the Administrator of HDA, addressed to the court below, confirming that HDA had rendered a ruling to the effect that, under the Industry Code, the afore-mentioned lease extension ‘ ‘ may only occur with the written consent of the tenant ’ ’ and advising the court that, ‘ ‘ All members of the Rent Stabilization Association had been officially notified of this ruling.” This letter additionally advised that the instant landlord’s name had been forwarded to the Rent Stabilization Association, “ for expulsion based on his failure to roll back rents ”.
The lower court determined that the Rent Stabilization Association and HDA disagreed ‘6 on the construction of the code and the act”, and that — with respect to the applicable provisions of both — “ an ambiguity clearly does exist and the need for clarification is obvious.” Basing its resolution of the “ ambiguity ” upon a consideration of the purpose and intent of the statute, the lower court decided the issue in favor of the tenant.
*509 Upon this appeal, appellant landlord submits, for this court’s judicial notice, Opinion 31 of the Conciliation and Appeals Board, promulgated December 22, 1969, wherein the CAB ruled that under subdivision A of section 20 of the code, an owner may unilaterally extend the term of a vacancy lease to a full three-year term, giving the tenant the option to cancel at the end of the original term, and thus obtain the maximum increase allowable for a three-year vacancy lease. The CAB acknowledged that an opposite construction had been given this section of the code both by HDA and the Civil Court (in the instant case) but held that, “ This Board cannot agree with the position taken by the Housing and Development Administration and cannot agree with the reasoning and decision in the Berfond case. This Board unanimously holds that Section 20(A) of the Code does not require the consent of the tenant.”
Appellant landlord has also submitted, dehors the record, a copy of a letter, dated January 21, 1970, from the Chairman of the Board of the Rent Stabilization Association to all association members. That letter, in reliance on CAB Opinion 31, counsels, in effect, that all members should disregard the official ruling of HDA and the judicial decision of the Civil Court in the instant case.
It is clear from the actions of the CAB, herein related, that the board misconceives its purpose, jurisdiction and authority. Accordingly, this court feels obliged, not merely to affirm the correctness of the Civil Court’s judgment, but to define the limits of authority of the CAB and its inter-relation to HDA in the implementation of the Rent Stabilization Law of 1969,
The CAB was created ‘1 to receive and act upon complaints from tenants and upon appeals from owners claiming hardship under the levels for fair rent increases adopted under this law” (RSL, Administrative Code of City of New York, § YY51-6.0, subd. b, par. [3]). It may well be that in carrying out this function, the board will be required to construe the law or the code or to resolve inconsistencies between them, although neither the law nor the code expressly empowers the board to do so. However, the primary power to interpret and construe the code and the law rests initially with the HDA and, ultimately, with the courts. Under the RSL, HDA’s power and function does not end with the initial approval of an industry code. HDA is empowered to ‘ ‘ promulgate such rules and regulations as it may deem necessary for the effective implementation of this law” (RSL, § YY5L4.0, subd. c). If HDA finds that the code, as written or applied, does not con *510 form to the requirements of the law it has the ultimate power to suspend the association (RSL, § YY51-6.0, subd. d).
As the Court of Appeals observed in 8200 Realty Corp. v. Lindsay (27 N Y 2d 124, “ The over-all supervision of the regulatory process is vested in the Housing and Development Administration which is expressly authorized to enact rules and regulations for the implementation of the statute (§ YY514.0, subd. c); to approve the code of an association (§ YY51-6.0, subd. b, par. [2]), and to discipline an association (subd. d).”
It can thus be seen that in any conflict of interpretation between HDA and CAB, the rulings of HDA take precedence and are controlling. (Of course, any such HDA ruling is subject to judicial review either on a case by case basis, or pursuant to article 78 of the CPLR.)
With respect to the specific section here in question, it is clear that HDA’s position is correct. Under section YY516.0 (subd. c, par. [4]) of the RSL, HDA was not to approve any proposed industry code unless it appeared to HDA that such code included ‘ ‘ provisions requiring members to grant a two or a three year lease at the option of the tenant ”. (Emphasis added.) The code approved by HDA provides expressly for the tenant’s right of selection with respect to “ renewal ” leases (Code, § 23, subd. A), and, with respect to the length of the term of a “ vacancy” lease provides, somewhat ambiguously, that the same “ shall be by agreement of the owner and tenant.” The CAB adopts the curious position that “ agreement by the owner and tenant ’ ’ means that the landlord can unilaterally extend the term of the lease. It draws this meaning from the language of subdivision A of section 20 of the code which provides that: 1 ‘ where a vacancy lease for an initial term of less than three full years was made effective after May 31, 1968 and prior to the acceptance of the Code by the Housing and Development Administration, the owner must extend the term of such lease to a full three year period in order to qualify for the maximum increase permitted by the RSL for vacancy leases at least three years. In the event that an owner shall extend such a lease, the tenant must be given the option to cancel the same at the end of the original term thereof.”
Standing alone, subdivision A of section 20 of the code may conceivably be susceptible of the construction urged by appellant landlord, namely, that landlords are empowered to unilaterally extend two-year leases to three-year terms and thereby obtain 25% rent increases. However, such a construction is not only at variance with fundamental principles of contract *511 law, but is at variance with the express requirements of the RSL (§ YY51-6.0, subd. c, par. [4]). Had the HDA chosen to construe subdivision A of section 20 as urged by appellant landlord, it might well have been obliged to rule that subdivision A of section 20 of the code was void, as inconsistent with the RSL. HDA chose, instead, to preserve this section as valid by construing it to require a tenant’s consent to the aforementioned lease extension. This course of procedure was reasonable, responsible and entirely proper.
There is no need to here belabor the question of legislative intent in the enactment of the Rent Stabilization Law of 1969. Section YY51-1.0 of the RSL succinctly sets forth such intent in the findings of the City Council of a serious public emergency existing in housing within the City of New York. The Council further found that because of a continued acute shortage of dwellings, “ serious threats to the public health, safety and welfare ’ ’ would result unless ‘ ‘ speculative, unwarranted and abnormal increases in rents ” are prevented as well as “ exactions of unjust, unreasonable and oppressive rents and rental agreements ” for apartments not subject to rent regulation. In furtherance of this legislative intent, both HDA and the Civil Court properly found that the tenant’s consent was required for an extension of his lease term.
The final judgment should be affirmed, with $25 costs.
Concur — Ltjpiaho, J. P., Streit and Gold, JJ.
Final judgment affirmed, etc.