OPINION OF THE COURT
Margaret Taylor, J.
These two actions (Proceedings I and II) are now before the court on six motions described in the court’s previous opinion (July 6, 1981). The court there denied respondent Department of Housing Preservation and Development’s (HPD’s) cross motion to remit the proceeding against it for administrative determination and, pursuant to CPLR 7804 (subd [f]), treated that motion as a motion to dismiss. HPD has now filed its answer.
In Proceeding I (19169/80) petitioner Wood seeks to have the court annul the acceptance by respondent Metropolitan Hotel Industry Stabilization Association (METHISA) of respondent Lucky Mott’s untimely application for membership in METHISA as owner and landlord of the Atlantic Hotel. In Proceeding II (24159/80) petitioner Wood asks the court to reverse respondent HPD’s denial of his objection to its approval of that application. In addition, petitioner Wood moves to consolidate these two proceedings.
*603 On December 20, 1979 respondent Lucky Mott bought the Atlantic Hotel, a hotel containing approximately 40 dwelling units and inhabited by single elderly men who occupied individual rooms and received hotel services including furniture, weekly linen service, use of a hall toilet and one shower. Prior to this date the Atlantic Hotel had not been registered with METHISA. In late May, 1980 Lucky Mott sought to empty the hotel. It posted in the lobby of the hotel and sent to each tenant a notice which in English and Chinese announced that the hotel would close on June 30,1980, and that all tenants would have to leave before that date.
The tenants thereupon commenced an action in this court (Teincken v Wong, Index No. 12212/1980) seeking an injunction against any evictions and any failure to maintain essential services. Tenants also sought a declaration that because the hotel had not registered with, and was not a member in good standing of METHISA its tenants were protected by rent control pursuant to the Rent Stabilization Law of 1969 (Administrative Code of City of New York, §§ YY51-4.0, YY51-6.1). The latter section provides that if a new owner fails to register a building with the appropriate rent stabilization association within 30 days of purchase, that building shall be deemed subject to rent control. Subsequently, on July 10, 1980 Lucky Mott applied to HPD for approval of an untimely application for membership in METHISA. HPD granted its approval on July 29, 1980. On August 5, 1980, subsequent to the tenants’ submission of a motion for a preliminary injunction, Lucky Mott applied for membership in METHISA and on the basis of that application consented to a stay against any evictions by other than legal means. The Teincken court granted tenants the preliminary injunction sought but did not make a declaration in regard to the rent control issue.
On August 20, respondent METHISA accepted Lucky Mott’s application. On September 2, 1980 tenants filed a protest of HPD’s approval of the untimely application and shortly thereafter brought Proceeding I against METHISA and Lucky Mott. On December 15, 1980, after more than 90 days had passed since the filing of the protest to HPD *604 and no action having been taken by HPD, tenants brought Proceeding II against HPD and Lucky Mott.[1]
CONSOLIDATION
A motion to consolidate pursuant to CPLR 602 is addressed to the sound discretion of the court, and, unless a substantial right of a party would be prejudiced thereby, should be granted where the questions of law or fact are common to both actions. (Inspiration Enterprises v Inland Credit Corp., 54 AD2d 839.) Lucky Mott, a respondent in both proceedings, claims that consolidation would prejudice its right to raise the three-month Statute of Limitations (CPLR 217) to bar joinder of HPD as a party in the first proceeding and to bar joinder of METHISA as a party in the second proceeding. Respondent Lucky Mott argues that absent such joinder each proceeding would be dismissed for failure to join a necessary party. Although this assertion is speculative, the court cannot decide whether a substantial right of Lucky Mott’s would be prejudiced by consolidation of these proceedings without at least implicitly deciding the very question that would be rendered moot by consolidation, viz., must either or both proceedings be dismissed for failure to join a necessary party pursuant to CPLR 1001. The court prefers to confront this question explicitly. (See Weistrop v Necchi Sewing Mach. Sales Corp., 3 AD2d 743, mot for lv to app or rearg den 3 AD2d 906.) The motion to consolidate is therefore denied. Given the undisputably common questions of law and fact, however, the two proceedings will be decided jointly.
JOINDER OF NECESSARY PARTIES
CPLR 1001 (subd [a]) provides for joinder of persons “who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action”. Lucky Mott moves to dismiss Proceeding I because HPD is not joined as a party and moves to dismiss Proceeding II because METHISA is not joined. However, although respondent METHISA also moves to dismiss Proceeding I on
*605 that ground, both it and HPD agree that HPD’s waiver of the 30-day time limitation prescribed in section YY51-4.0 of the Administrative Code was a necessary precondition for METHISA’s own acceptance of Lucky Mott’s application.
In these circumstances for METHISA to fail to rescind its acceptance of Lucky Mott’s application in the event this court reverses HPD’s approval of that application would be a deliberate attempt to undermine this court’s ruling. (See Matter of Castaways Motel v Schuyler, 24 NY2d 120.) The court is confident that a finding for petitioner in Proceeding II, reversing HPD’s rejection of petitioner’s objection to waiving the time limitation on applications to METHISA, would grant the petitioner all the relief he seeks.
Similarly, a finding for petitioners in Proceeding I would afford them the same complete relief. Although HPD’s waiver may well have been a condition precedent of METHISA’s acceptance of the application, that acceptance may be found contrary to the Code of the Metropolitan Hotel Industry Stabilization Association, Inc. (METHISA Code) or other binding laws or rules despite HPD’s independent prior action. Thus, in neither proceeding is the possibility of complete relief frustrated by the absence of another party. Nor has there been any showing that either HPD’s interest in Proceeding I or METHISA’s in Proceeding II would be inequitably affected by their respective absence from these proceedings. (Matter of Castaways Motel v Schuyler, supra; Matter of Spinney Hill Collision v Caso, 56 AD2d 655.)
Even if joinder were indicated in either of these proceedings pursuant to CPLR 1001 (subd [a]), dismissal of one or both of them would be “only a last resort.” (Siegel, New York Practice, § 133; Aireo Alloys Div., Aireo, Inc. v Niagara Mohawk Power Corp., 65 AD2d 378.) As discussed above, an effective judgment may be rendered in each proceeding despite the absence of the party not joined. (CPLR 1001, subd [b], par 5.) Since the Statute of Limitations has passed for the bringing of either of these proceedings anew, petitioner would have no remedy if these proceedings were dismissed. (CPLR 1001, subd [b], par 1.) Finally, no actual prejudice can accrue either to METHISA *606 or to HPD from the failure to join each of them in the proceeding in which the other is named since in fact both are present before the court at the same time on the same question. (CPLR 1001, subd [b], par 2.) In view of these considerations, the fact that for a period of approximately 25 days petitioner could have joined METHISA and HPD in one proceeding (see CPLR 1001, subd [b], par 3) pales into insignificance, and justice requires that these proceedings not be dismissed for nonjoinder.
This conclusion is especially indicated in view of the short statutory period allowed for the bringing of article 78 proceedings. (CPLR 217.) Where the interests of a party who should have been joined are otherwise protected, as they are here, an article 78 proceeding ought not be dismissed for failure to join that party if, as here, the proceeding cannot be brought anew because of the Statute of Limitations. (Matter of Greaney v Poston, 50 AD2d 653; Matter of Sandor v Nyquist, 45 AD2d 122.)
EXHAUSTION OF ADMINISTRATIVE REMEDIES
Lucky Mott argues that Proceeding I (against it and METHISA) must be dismissed because petitioners failed to appeal METHISA’s acceptance of the late application to the METHISA Conciliation and Appeals Board (METHISA-CAB) and because petitioners’ protest to HPD was still pending at the time Proceeding I was brought.
In support of its first point Lucky Mott adduces subdivision (a) of section 12 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Rent Stabilization Code, RSA) which provides for appeals to the Conciliation and Appeals Board of the Rent Stabilization Association (RSA-CAB) of a determination accepting an untimely application for membership in the RSA. That code, however, does not apply to hotels. Pursuant to section YY51-6.1 of the Administrative Code, hotels are members not of the RSA but of METHISA. They are governed not by the Rent Stabilization Code but by METHISA’s Code, and they have their own CAB. The METHISA Code, unlike the RSA’s, does not provide for appeal to a CAB of a decision to admit an untimely applicant. There is no provision in the METHISA Code, or elsewhere, pursuant to which petition *607 ers could have appealed to the METHISA-CAB, METHISA’s approval of Lucky Mott’s application.[2]
The protest pending before HPD at the inception of Proceeding I was a protest of HPD’s approval of Lucky Mott’s application, not of METHISA’s acceptance of it. Although HPD’s interpretation of the RSA Code and, analogously, of the METHISA Code, controls in any dispute with the RSA or with METHISA (Berfond v Hoffman, 65 Misc 2d 506) there is no provision for an appeal to HPD of an action taken by METHISA.
Thus, there were no administrative remedies available to petitioner with regard to METHISA’s act which petitioner failed to pursue. Where a department has not promulgated rules or regulations for the raising of issues brought to trial there cannot have been a failure to exhaust administrative remedies. One cannot be held to invoke nonexistent remedies. (Auto Body Federation of Empire State v Lewis, 80 AD2d 593.)
Although in a prior decision in Proceeding II (against Lucky Mott and HPD) this court refused to remit the proceeding to HPD, HPD now renews its argument and adduces three additional cases in support of its position. The short answer is that this court’s decision of July 6, 1981 is the law of the case. The longer and more persuasive answer is that of those three cases one dealt with a protest for which the proper time for a determination was legislatively extended in the special circumstances of 1962. (Matter of Peters v Gabel, 37 Misc 2d 250.) Jt is of no relevance here. In the other two cases HPD had in fact ruled on the protests albeit not within 90 days of their having been filed. In those circumstances, the courts refused to reverse the rulings merely because they had been made after the statutory 90-day period. (Matter of Korniczky v Gabel, 37 Misc 2d 349, affd 19 AD2d 590; Matter of Dickerson, NYLJ, Aug. 5, 1981, p 14, col 3.) HPD presents no authority to support its contention that where, as here, more than 90 days have passed after a protest has been filed and HPD has not ruled on that protest, the court should refuse to act. *608 When more than 90 days passed without a ruling by HPD on the protest petitioner had submitted to it that protest was in effect denied. (Rent and Eviction Regulations of City of New York, § 100, subd a [New York City Rent Regulations]; Administrative Code, § Y51-8.0, subd d.) Petitioner had exhausted the administrative remedies available to him and was entitled to commence an action in court.
OTHER PRELIMINARY MATTERS
METHISA urges that it had no discretion to refuse Lucky Mott’s application once HPD had approved it and that therefore there was no “determination” within the meaning of CPLR 7801. Consequently, it contends, an article 78 proceeding does not lie against it. This bizarre argument appears to rest on a literal misreading of the only authority METHISA cites for it (8 Weinstein-KornMiller, NY Civ Prac, par 7801.06). An article 78 proceeding in the nature of mandamus applies precisely to ministerial as distinguished from discretionary acts. (Siegel, New York Practice, § 558.) The three limitations set forth in CPLR 7801 are “inapplicable to prohibition and to those mandamus proceedings which seek to review a ‘not-discretionary’ act or refusal to act.” (8 Weinstein-Korn-Miller, NY Civ Prac, par 7801.06.)
METHISA argues that there is ho justiciable issue before the court in Proceeding I since petitioners were in no way prejudiced by METHISA’s acceptance of Lucky Mott’s application. Because of that acceptance the tenants of the Atlantic Hotel were placed under the protection of the Rent Stabilization Law and denied the protections of the Rent Control Law. Whether tenants are covered by the Rent Stabilization Law of 1969 or the New York Rent Control Law is a matter of equal moment to tenants as it is to landlords, and it is a matter that has been ruled on in a case on which all respondents in these proceedings rely. (Matter of Fein v Rent Stabilization Assn., 101 Misc 2d 216.)
Lucky Mott raises two additional affirmative defenses to Proceeding II: (1) that petitioner failed to name and join the other tenants as party petitioners, and (2) that the *609 protest to HPD was ineffective because it was neither signed nor verified by any tenant and that, therefore, the administrative remedy afforded by the provision for protests was not exhausted. Although an adverse judgment by this court against any individual tenant might well prevent other tenants of the hotel from relitigating the same issues (see, e.g., 111 East 88th St. Partners v Fine, 110 Misc 2d 960) it does not follow from this that nonjoined tenants can be inequitably affected by a decision in either of these proceedings. METHISA’s reliance on Matter of Magier v Joy (105 Misc 2d 434) is misplaced. What the court there held was that a tenant is a necessary party in an article 78 proceeding seeking an order to authorize his eviction.
As to tenants’ signatures and verifications on an HPD protest, it is correct that where a protest is made jointly by, or on behalf of, a number of tenants, subdivision b of section 91 of the New York City Rent Regulations requires that those tenants sign and verify the protest. Thus, a protest with regard to rent adjustments in certain, but not all, of the apartments in a building is a nullity if it is brought by an attorney on behalf of “ Various tenants’ ”. (Matter of Streg, Inc. v Gabel, 39 Misc 2d 93, 99.) The situation is far different where, as here, the protest is a representative one seeking a determination that will affect not some but all the tenants in a building. (Matter of Jambaru Realty Corp. v Gabel, 19 AD2d 700.) Even if the requirements of subdivision b of section 91 of the New York City Rent Regulations applied to representative protests, respondent Lucky Mott waived them when it answered the protest on October 8, 1980, supplemented that answer on October 9, and filed a further reply on October 24, all without raising the issue it now seeks to raise. (See Matter ofLadore v Mayor & Bd. of Trustees of Vil. of Port Chester, 70 AD2d 603; Matter of Houghwot v Town of Kiantone, 69 AD2d 1011.)
THE MERITS
Petitioner in these proceedings asserts that neither METHISA nor HPD has the authority to waive the temporal requirements of section YY51-4.0 of the Administrative Code. That section provides in relevant part that in order to be a member in good standing of either of the landlord *610 associations to be formed pursuant to the Rent Stabilization Law, an owner must have “joined such an association within thirty days of its registration with the housing and development administrative or within thirty days after becoming such owner”. HPD counters that it has the authority to waive the time limitations in section YY51-4.0 of the Administrative Code and to allow METHISA to enroll a hotel whose owner has not timely applied. HPD relies on sections YY51-3.1, YY51-6.1, and YY51-4.0 of the Administrative Code.
Section YY51-3.1 of the Administrative Code merely provides that dwelling units in class A or class B hotels which fall within the section’s coverage are subject to the Rent Stabilization Law despite the provision in subdivision a of section YY51-3.0 of the Administrative Code that the law applies to “Class A multiple dwellings.” Analogously, section YY51-6.1 of the Administrative Code provides that, despite the provision in section YY51-6.0 of the Administrative Code which limits the applicability of that section to dwelling units covered by section YY51-3.0 of the Administrative Code (i.e., class A multiple dwellings), a “hotel industry stabilization association” having as its members those dwelling units which are covered by section YY51-3.1 of the Administrative Code (i.e., class A and B hotels) may be established. Subdivision b of section YY516.1 of the Administrative Code provides in relevant part that a “hotel industry stabilization association shall not be accepted for registration hereunder unless it appears to the housing and development administration [now HPD] that (1) consistent with the provisions of section YY51-4.0 membership is open to any owner”.
Section YY51-4.0 of the Administrative Code, however, is precisely the locus of the time limitation with which respondent Lucky Mott has concededly failed to comply. To be sure, subdivision c of section YY51-4.0 of the Administrative Code provides that the “housing and development administration shall have power to promulgate such rules or regulations as it may deem necessary for the effective implementation of this law.” But HPD adduces neither rule nor regulation regarding late enrollment promulgated pursuant to this subdivision. Its ad hoc determination that *611 “the timing of the application was acceptable,” does not rise to the dignity of a rule or regulation. Indeed, absent a norm-setting rule, it is hard to see how this ad hoc determination could have been anything but arbitrary. Neither HPD nor Lucky Mott adduces a single consideration to explain why in this case (but not in all cases) a waiver of the requirement of section YY51-4.0 of the Administrative Code was appropriate. Respondents have failed to present to the court any “‘rational basis for the conclusions [reached] by the administrative body’ ”. (Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108.) In the particular circumstances of this case the court is unable to see any such basis on its own. Judicial deference to such a conclusion is unwarranted. (Matter of Mounting & Finishing Co. v McGoldrick, supra; Fein v Rent Stabilization Assn., 101 Misc 2d 216, supra.)
Respondents in both proceedings bring to the attention of the court section 12 of the Rent Stabilization Code. That section in some circumstances allows the RSA to accept a late application for membership. This code, however, does not apply to hotels. Nor is this a situation in which no code applies directly and a code governing an analogous question might be looked to for guidance.
The Rent Stabilization Law of 1969 provided ab initio for two separate landlord associations. Section YY51-3.0 of the Administrative Code applied the law to certain class A multiple dwellings. Section YY51-3.1 of the Administrative Code applied the law to certain hotels. Section YY516.0 of the Administrative Code provided for the establishment of an association of owners of class A multiple dwelling buildings covered by section YY51-3.0 of the Administrative Code for the adoption of “a code for stabilization of rents covering related terms and conditions of occupancy” and the establishment of a conciliation and appeals board. Section YY51-6.1 of the Administrative Code provided for an association of owners of hotel buildings covered by section YY51-3.1, the adoption by that association of a code of its own and the establishment of its own CAB. Thus, pursuant to this statute, there are now two separate landlord associations, the Rent Stabilization Association and METHISA, each of which has promulgated its own code. *612 The METHISA Code, although in many respects similar to the RSA Code, does not provide for the acceptance of late applications.
Even if section 12 of the RSA Code were to be borrowed and grafted onto the METHISA Code, that section would not justify acceptance of Lucky Mott’s untimely application. For section 12 of the RSA Code allows the RSA to accept a late application only if the failure timely to apply “was the result of such circumstances, not involving any fault on the part of the owner, as would make it inconsistent with the purposes of the Rent Stabilization Law to place the affected dwelling units under rent control” (and, after May 24, 1971 only with the approval of the Housing and Development Administration “unless the application is made by a new owner of a registered building purchased from an owner in good standing in the Association”).
In attempting to excuse its delay Lucky Mott asserts only that it did not know until the Teincken hearing that it was obliged to enroll the hotel in METHISA. If a simple assertion of ignorance were allowed to excuse a failure timely to enroll, owners would risk nothing by delaying until their tenants initiated litigation or administrative actions. In other words, an owner could fail to register until caught and then be allowed to register without penalty. It is difficult to image a policy less consistent with the purposes of the Rent Stabilization Law, or any other law, than one which holds out the hope of profit to a person who does not comply with the law and imposes no penalty if (s)he is caught. See, e.g., section 14(f) of the New York City Rent, Eviction, and Rehabilitation Regulations.
Finally, respondents in both proceedings urge the court to follow Fein v Rent Stabilization Assn. (101 Misc 2d 216, supra) in allowing flexibility in the administration of the Rent Stabilization Law when application of an absolute rule would lead to an unfair result. Fein involved application of a 1977 amendment to section 5 of the Rent Stabilization Regulations of the Housing and Development Administration (now HPD). As amended, section 5 allowed each landlord association, on prior written approval of the HDA, “to grant reinstatement to any former member who had been expelled for non-payment of dues” provided the *613 applicant met certain factual criteria. In addition, section 5, as amended, set forth time limitations within which applications for readmission had to be made. The landlord in Fein met one of the necessary factual criteria required but his application for readmission was untimely.
The purpose of the 1977 amendment of section 5 of the Rent Stabilization Regulations of the Housing and Development Administration was to provide for the first time for the possible readmission of expelled members. This change was necessary to deal with “situations in which there are compelling equitable reasons to grant requests for approval of readmission.” (The City Record, Jan. 17, 1977, cited in Fein v Rent Stabilization Assn., supra, at p 221.)
Strictly speaking, Fein (supra) is not applicable here. This case is not about a landlord’s failure to pay dues. That failure is certainly a serious one, for it undermines the institutional mechanism that has been set up to administer and effectuate the Rent Stabilization Law. Respondent Lucky Mott’s failure, however, a failure to apply for admission, is far more grievous. It betokens an attempt to evade the substantive provisions of the Rent Stabilization Law and, as such, it undermines the very purpose of the law. But grievousness of fault aside, the only liberalizing provision with regard to failure to apply for membership analogous to amended section 5 of the regulations is section 12 of the RSA Code. And that section, as discussed-above, does not apply to METHISA.
The court turns finally to respondents’ basic argument. Respondents do not so much urge the holding of Fein (supra, p 225) on this court as they do its larger lesson: that the “judicial process * * * necessitates flexibility when presented with compelling instances calling for the application of equity and justice.” Again, the answer must be that this case is not Fein. Without repeating the encomia offered to Joseph Bodak, the landlord in Fein, suffice it to say that he was praised by community groups as an ideal landlord who had bought buildings on the verge of ruin and, by investment and labor, made viable housing of them. Although all his tenants were notified of the late application, not one objected to it. Respondent Lucky Mott is far from entitled to the flexibility accorded in Fein. *614 Shortly after buying the building respondent attempted illegally to evict all the tenants, an attempt which it now characterizes as “advis[ing the tenants that they] might wish to make other living arrangements.”
Respondents commenced construction on a lot adjoining the Atlantic Hotel and did nothing to protect tenants of the hotel from the consequences of that activity, primarily a large infestation of rodents. Respondents entered into a contract to let the hotel to Immigrant Social Services at quite reasonable rents. That contract, however, was contingent upon receipt of Federal antipoverty funds to renovate the hotel. An application for such funds was duly made by Immigrant Social Services and approved by the local Area Policy Board at an “annualized” level of $96,630. On November 3,1980 the Development Agency of the city’s Human Resources Administration rejected the recommended funding, citing the possibility of a conflict of interest in the local board. Ms. Wong, one of the two principals of Lucky Mott Realty, had sat as a member of the board and had apparently neglected to mention to the other board members that she had a large personal interest in the funding proposal under discussion. As in Fein (supra, p 222) the “equities here appear to be clear.” They do not favor the respondent.
For all the above reasons, respondents’ motions to dismiss Proceedings I and II are denied.

. Subdivision a of section 100 of the Rent and Eviction Regulations of the City of New York and subdivision d of section Y51-8.0 of the Administrative Code of the City of New York provide that a protest submitted to (the predecessor agency of) HPD shall be deemed denied if it is not acted upon within 90 days.

. The office of Legal Counsel of METHISA’s CAB apparently agrees with this statement: Petitioner’s affirmation in opposition to METHISA’s motion to dismiss, Nos. 26, 27.