In the Matter of BOB WOOD, on Behalf of Himself and All Other Tenants of the Atlantic Hotel Similarly Situated, Respondent, v METROPOLITAN HOTEL INDUSTRY STABILIZATION ASSOCIATION, Respondent, and LUCKY MOTT REALTY COMPANY, Appellant.

In the Matter of BOB WOOD, Respondent, v DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, Respondent, and LUCKY MOTT REALTY COMPANY, Appellant.

First Department, October 11, 1983

APPEARANCES OF COUNSEL

*Hal Brodie* of counsel (*Anne R. Teicher* with him on the brief; *Norman Siegel,* attorney), for respondent.

*William E. Rosen* of counsel (*Rosenberg & Estis, P.C.,* attorneys), for appellant.

OPINION OF THE COURT

SULLIVAN, J.

This appeal is from an order annulling a determination by the Commissioner of the Department of Housing Preservation and Development (HPD), which granted an owner's late enrollment application for membership in the Metropolitan Hotel Industry Stabilization Association.

The Atlantic Hotel is a single-room occupancy hotel, the dwelling units of which constitute hotel units within the meaning and intendment of the Rent Stabilization Law of 1969 and the Code of the Metropolitan Hotel Industry Stabilization Association. The premises were acquired by its present owner, Lucky Mott Realty Company, on December 20, 1979. Unaware, however, that certain of the tenancies were protected under the Rent Stabilization Law, Lucky Mott failed to register as a member with the Metropolitan Hotel Industry Stabilization Association within 30 days of taking title as required by the Rent Stabilization Law and the Code of the Metropolitan Hotel Industry Stabilization Association. Nor had the prior owner registered with the Metropolitan Hotel Industry Stabilization Association. Still oblivious to rent regulation requirements and unaware that the tenancies were protected, Lucky Mott posted a notice and informed each tenant in writing in May, 1980 that the hotel would close on June 30, 1980, by which date the tenants were required to vacate. Apparently, Lucky Mott had intended to renovate the premises with Federal antipoverty funds and to offer them for a community or charitable use.

When the tenants commenced proceedings to bar termination of their tenancies Lucky Mott, on the advice of counsel that it should register with the Metropolitan Hotel Industry Stabilization Association, filed an application with the commissioner for authorization for late enrollment. The procedures adopted by the commissioner for

authorization for late enrollment as a member in an industry stabilization association require an owner to file with HPD a written application setting forth the essential facts pertaining to ownership of the premises, the physical characteristics of the building, and the current tenancies including the duration of each tenancy, the rent paid and services provided. The commissioner's uniform criteria for approval of such an application include such factors as proper registration of the premises with the Office of Code Enforcement, current payment of real property taxes and water and sewer charges, and violation-free maintenance of the premises.

By written notice of July 29, 1980, the commissioner advised Lucky Mott that the application had been granted, and that it could apply to the Metropolitan Hotel Industry Stabilization Association for membership. Upon being notified of the owner's subsequent application for late enrollment in the Metropolitan Hotel Industry Stabilization Association the tenants filed a protest with the commissioner challenging his determination authorizing such enrollment. When the commissioner failed to determine the tenants' protest within 90 days, one of the tenants instituted a CPLR article 78 proceeding on behalf of himself and all other tenants similarly situated to review the "deemed denial" of the protest. The same tenant also instituted an article 78 proceeding against the Metropolitan Hotel Industry Stabilization Association and Lucky Mott, challenging the association's enrollment of Lucky Mott as a member. Deciding the two proceedings simultaneously, Special Term granted both petitions, holding that the commissioner lacked the authority to grant the owner's application for late enrollment because the Code of the Metropolitan Hotel Industry Stabilization Association did not contain any provision specifically authorizing such an application (112 Misc 2d 601). Special Term also held that even if the commissioner had the authority to consider Lucky Mott's application the circumstances were such as to compel its denial. We disagree with both of these premises and, accordingly, reverse and reinstate the commissioner's determination.

The Rent Stabilization Law of 1969 (Administrative Code of City of New York, ch 51, tit YY), which applies to

both multiple dwelling (Administrative Code, § YY51-3.0) and hotel dwelling units (Administrative Code, § YY51-3.1), provides for the self-regulation of the housing industry through the creation of separate industry associations (Administrative Code, §§ YY51-6.0, YY51-6.1). Pursuant to such authorization the Metropolitan Hotel Industry Stabilization Association has been established to regulate hotel dwelling units while the Rent Stabilization Association of New York City was established to regulate multiple dwelling units.

The Housing and Development Administration (HDA), the predecessor of HPD, was delegated the responsibility for supervising this self-regulatory process. (Administrative Code, § YY51-4.0, subd c; § YY51-6.0, subd b, par [2]; subd d; see *8200 Realty Corp. v Lindsay,* 27 NY2d 124.) Each industry association was required to register with HDA and each was made responsible for regulating the conduct of its members. (Administrative Code, §§ YY51-6.0, YY51-6.1.) Since each association was required to promulgate, subject to the approval of HDA, a code of rules and regulations governing the rights and obligations of its members (Administrative Code, §§ YY51-6.0, YY51-6.1) two distinct codes have been established, viz., the Code of the Metropolitan Hotel Industry Stabilization Association and the Code of the Rent Stabilization Association of New York City. Each member of an association must agree in writing to comply with the code (Administrative Code, § YY51-6.0, subd b, par [4]; § YY51-6.1, subd b, par [4]), which is required to provide sanctions for violations of its provisions (Administrative Code, § YY51-6.0, subd c, pars [10], [11]; § YY51-6.1, subd c).

Under the Rent Stabilization Law an owner is allowed 30 days after acquisition of a multiple dwelling or hotel, the dwelling units of which are covered by rent stabilization, to register his membership with the applicable industry association. (Administrative Code, § YY51-4.0, subd a.) Recognizing, in view of the self-regulating nature of the rent stabilization system, the need for compliance with registration requirements, the city council included in the law a provision penalizing an owner for failure to join an association. In such case the dwelling units which other-

wise would have been covered by rent stabilization revert to regulation under rent control. (Administrative Code, § YY51-4.0, subd a.) It should be noted that this is the only specific sanction authorized by the Rent Stabilization Law.

Since its original promulgation in 1969 the Code of the Rent Stabilization Association of New York City has contained a provision permitting late registration under certain conditions. The Code of the Metropolitan Hotel Industry Stabilization Association, however, did not contain a similar provision at the time of Lucky Mott's application, although the association did promulgate such a rule,[1] effective July 15, 1982, subsequent to Special Term's decision, but prior to the entry of judgment. In our view, however, such a rule was unnecessary to confirm the commissioner's authority to consider the application of an owner of hotel dwelling units for late enrollment as a member in the industry stabilization association and to establish a procedure for entertaining such application. Since the Rent Stabilization Law reposes in HDA and its successor, HPD, "over-all supervision of the regulatory process" (*8200 Realty Corp. v Lindsay,* 27 NY2d, at p 131), the commissioner is vested with the implicit authority to authorize the acceptance of such applications, and the acknowledgment of such discretion in the implementing industry code is mere surplusage. The commissioner derives his authority, not from an industry code implementing the Rent Stabilization Law or even from his own approval of that code, but, rather, from the breadth and spirit of the statute itself.[2]

---

1. Section 11 of the Code of the Metropolitan Hotel Industry Stabilization Association provides as follows: "LATE ENROLLMENT Notwithstanding the above section, an owner may be granted permission for late enrollment if he (a) presents a valid reason for late enrollment, (b) obtains the written approval of the Department of Housing Preservation and Development, and (c) satisfies any requirements imposed by the Association for each calendar year for which dues would have been paid if the registration had been timely."

2. We cannot, however, accept Lucky Mott's argument that even if, as Special Term held, a Metropolitan Hotel Industry Stabilization Association Code provision authorizing late enrollment was required before the commissioner could act on such an application, the Metropolitan Hotel Industry Stabilization Association's promulgation of such a code provision cured that defect. While it is well settled that the rights of parties and other legal relations must be determined in accordance with the law, not as it existed as of the date of the commencement of an action, but as it exists at the time of decision (*Fruhling v Amalgamated Housing Corp.,* 9 NY2d 541; *Strauss v University of State of N. Y.,* 2 NY2d 464, 467; *Quaker Oats Co. v City of New York,* 295 NY 527, 536), the latter will be given retroactive effect only when the law was clearly intended to have such effect (see *Fruhling v Amalgamated Housing Corp., supra*). The Metropolitan Hotel Industry Stabilization Association's Code provision, effective July 15, 1982, authorizing

Penalizing every failure to enroll within the prescribed time limit, by placement of the affected dwelling units under rent control, does not serve the purposes of the Rent Stabilization Law, especially where the owner was not at fault. Judicious effectuation of the statute's intent precludes an overly rigid interpretation of its enrollment provisions. (Cf. *Matter of Fein v Rent Stabilization Assn.,* 101 Misc 2d 216.)

Furthermore, while the Rent Stabilization Law does not distinguish between an owner of multiple dwelling units and the owner of hotel dwelling units with respect to the obligation to enroll timely as a member of an industry stabilization association, Special Term created such a distinction by holding that the lack of a provision in the Code of the Metropolitan Hotel Industry Stabilization Association acknowledging the commissioner's authorization to approve a late enrollment application deprived the commissioner of such authority. Thus Special Term's decision created a classification which unfairly discriminated against the owners of hotel dwelling units by denying them the same opportunity for late enrollment as is allowed the owners of multiple dwelling units.

We further find that the determination to grant Lucky Mott's application for late enrollment was neither arbitrary nor capricious. As in *Matter of Krueger v New York City Conciliation & Appeals Bd.* (77 AD2d 517, 519), the record is bereft of any indication of "bad faith on the landlord's part in the membership application". Lucky Mott's application was based upon the good-faith assertion that it was unaware of the requirement that it had to register with the Metropolitan Hotel Industry Stabilization Association. It cites the fact that the prior owner, who also had failed to register, never informed it that the tenancies were subject to rent stabilization or any other form of regulation. Thus, the commissioner concluded that Lucky Mott had presented a sufficient excuse for its failure to enroll within the prescribed time limit. As to the merits the commissioner appropriately assessed the new owner's application according to the guidelines which he uniformly

a late enrollment application, could not provide the authority to entertain such an application made two years earlier if the commissioner were otherwise lacking such authority.

applied to all other similar applications. On this basis the commissioner concluded that Lucky Mott had satisfied the requirements for approval of its application. Since that conclusion has a rational basis, it may not be disturbed. (*Matter of Plaza Mgt. Co. v City Rent Agency,* 48 AD2d 129, affd 37 NY2d 837; *Matter of Krueger v New York City Conciliation & Appeals Bd.,* 77 AD2d 517, *supra.*) "The court is neither a social agency nor a legislative body. Its duty is not to second-guess the wisdom of what an administrative agency has done, nor to reform the procedures and methods used by that agency." (*Matter of Procaccino v Stewart,* 32 AD2d 486, 489.) Courts should not substitute their judgment for that of the administrative agency "intrusted by the Legislature to deal with these specialties". (*Matter of Niagara Falls Power Co. v Water Power & Control Comm.,* 267 NY 265, 278.)

Accordingly, the order/judgment, Supreme Court, New York County (TAYLOR, J.), entered May 9, 1983 which, *inter alia,* granted the petitions to annul HPD's determination authorizing Lucky Mott's application for late enrollment in the Metropolitan Hotel Industry Stabilization Association should be reversed, on the law, without costs or disbursements, the motion to dismiss the petitions granted, and the determination reinstated.

MURPHY, P. J., ROSS, SILVERMAN and BLOOM, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on May 9, 1983, reversed on the law, without costs and without disbursements, the judgment vacated, the motion to dismiss the petitions granted, and the determination reinstated.