*301 OPINION OF THE COURT
Meyer, J.
Regulation J (1) (a), issued by the New York City Loft Board, which permits the landlord of an interim multiple dwelling registered with the Board pursuant to article 7-C of the Multiple Dwelling Law to evict a residential occupant of a unit, who has no lease or rental agreement with the landlord, on the ground "that the unit is not the primary residence of such residential occupant,” was within the Board’s authority to issue under article 7-C and is valid. The order of the Appellate Division should, therefore, be affirmed, with costs.
Petitioners are a tenants’ association and five individuals who occupy loft space in buildings owned by respondents New York University, Chand Realty Associates and 655 Realty Associates. Each individual was served with a notice of termination by his or her landlord pursuant to Regulation J (1) (a).[1] They and the Association then began an article 78 proceeding against the Loft Board and the landlords seeking to have the regulation declared ultra vires and invalid. In that proceeding they sought an order restraining the landlords from seeking possession. The papers submitted by petitioners on the latter application and in response to the landlords’ motion to dismiss include the depositions of petitioners Close and Eisenstein taken in prior proceedings between the parties and an affidavit filed in that prior litigation which establish that the space occupied by petitioners Close, Eisenstein and Molner is not his or her primary residence. Furthermore, the petition in the present proceeding contains no allegation as to any of the individuals that the space occupied is his or her primary residence.
Special Term’s order and judgment converted the proceeding to an action for declaratory judgment, declared the regulation "invalid as an exercise of legislative power,” declared the notices of termination void, and enjoined the landlords from prosecuting any proceeding for possession based upon Regula *302 tian J (1) (a). On appeal by the Loft Board and the landlords, the Appellate Division modified, on the law, by striking all decretal paragraphs except that converting the proceeding, declared the regulation valid, and otherwise affirmed.
The essence of petitioners’ argument is that because article 7-C refers to a "residential occupant qualified for protection” but, unlike the Emergency Housing Rent Control Law (McKinney’s Uncons Laws of NY § 8582 [2] [1 ] [L 1946, ch 274, § 2, as amended]); the Local Emergency Housing Rent Control Act (McKinney’s Uncons Laws of NY § 8605 [L 1962, ch 21, as amended]); the Emergency Tenant Protection Act of 1974 (ETPA) (McKinney’s Uncons Laws of NY § 8625 [a] [ii] [L 1974, ch 576, § 4, as amended);[2] the New York City-Rent and Rehabilitation Law (Administrative Code of City of New York § Y51-3.0 [e] [2] [i] [10]), and the New York City Rent Stabilization Law (Administrative Code § YY51-3.0 [a] [1] [f]), nowhere makes "primary residence” a qualification, and in defining an "interim multiple dwelling” refers to "residence or home,” the regulation constitutes an unauthorized extension of the statute. They argue also that to construe the article as did the Appellate Division is to frustrate the legislative purpose. For a number of reasons we disagree.
First, the argument is based upon a skewed view of the Legislature’s purpose in enacting the article. The legislative findings set forth in Multiple Dwelling Law § 280 begin with the statement "that a serious public emergency exists in the housing of a considerable number of persons * * * which emergency has been created by the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance” with applicable laws and standards (emphasis supplied). It also contains the declaration "that as a consequence of the acute shortage of housing * * * the tenants in such buildings would suffer great hardship if forced to relocate”, and that governmental intervention is necessary "to establish a system whereby residential rentals can be reasonably adjusted so that residential tenants can assist in paying the cost of such legalization without being forced to relocate” (emphasis supplied). Thus, the emphasis is upon residential use and residential tenants being forced to undergo the hardship of relocation. Neither in the legislative findings nor in the other sections of the article is there any reference to protection of the tenant with respect to the *303 commercial or work use of the premises. Yet if any residential use, however limited in time or space, is sufficient, the statute is effectively turned on its head.
The purpose of article 7-C comes into focus when one looks at former article 7-B of the Multiple Dwelling Law, now article 27 of the Arts and Cultural Affairs Law, which was enacted in 1964, some 18 years before article 7-C became law in 1982. As originally enacted, article 7-B contained in its section 275 the legislative finding that "persons regularly engaged in the visual fine arts generally find it financially impossible to maintain quarters for the pursuit of their artistic endeavors separate and apart from their places of residence” and that there existed buildings occupied in the past for commercial and manufacturing purposes suitable "for use by persons regularly engaged in the visual fine arts for the combined purposes of pursuit of their artistic endeavors and residences.” As amended by chapter 853 of the Laws of 1977 and now contained in article 27 of the Arts and Cultural Affairs Law, former article 7-B was expanded in purpose to cover "general residential occupancy of loft, commercial or manufacturing buildings,” and former section 275, now Arts and Cultural Affairs Law § 27.01, contains the further declaration that "legislation governing the alteration of such buildings to accommodate general residential use must of necessity be more restrictive than statutes heretofore in effect, which affected only joint living-work quarters for artists.”
Evident from the history of the enactment of article 7-C, which includes the previously existing more broadly purposed article 7-B, and from the legislative findings in section 280, is the legislative purpose to protect the residential aspect of occupancy of an interim multiple dwelling rather than to shield the tenant whose use is essentially commercial and only incidentally residential.
Secondly, petitioners, relying on the decision in Axelrod Co. v Dixon Studio (122 Misc 2d 770), the use in section 281 (1) of the phrase "residence or home,” the rule that a statute must be read to give meaning to each word in it (Matter of Smathers, 309 NY 487, 495; McKinney’s Cons Laws of NY, Book 1, Statutes § 98 [a]) and the distinction drawn between residence and domicile in the law of wills (Matter of Newcomb, 192 NY 238) and of venue (Siegel, NY Prac § 118, at 147-148), argue that article 7-C protects "all residential occupants” (emphasis in original) and that the regulation has in effect eliminated the word "residence” from the statute.
*304 The fallacy of the argument lies in part in its analogy to case law construing statutes with purposes very different from that of article 7-C, but in the main in the selection of words from the statute upon which it is based. The word "or” between "residence” and "home” suggests a distinction between "residence” and "home” which completely disappears when used, as it is in section 281 (1) (iii), as part of the phrase "the residence or home” (emphasis supplied). "The”, as Webster’s Third New International Dictionary (at 2368) informs us, "refers to someone or something that is unique * * * or exists as only one at a time.” Ergo, "the residence or home” as used in section 281, cannot properly be construed to exclude primary residence as a measure of its protection.
Thirdly, petitioners’ argument that the reference to "primary residence” in the other rent control statutes and its absence from article 7-C mandates construction of the latter article to cover any residence, no matter how many other residences the occupant may have, overlooks the rule, recognized by us in Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach (39 NY2d 1029) in affirming on the opinion at Special Term (79 Misc 2d 438), that statutes in pari materia are to be construed together and "as intended to fit into existing laws on the same subject unless a different purpose is clearly shown” (79 Misc 2d, at p 444). Here, as in Delaware Midland, if article 7-C is read as petitioners would read it, "the priority of need” (id.) is indeed reversed and an absurd result produced. The progression from article 7-B’s initial protection of loft-tenant artists who lived and worked in the same space because they could not afford to do otherwise to the present provisions governing general residential use of loft space contained in article 7-C and Arts and Cultural Affairs Law article 27, evidences a greater legislative commitment to alleviation of the housing shortage by making more residential space available, yet article 7-C, according to petitioners, contains less authority to do so as concerns a multiresidenced loft tenant, provided only that he or she makes some residential use of some part of the space. If we ignore the statute’s use of "the residence” referred to above and concentrate only on the absence from article 7-C of the word "primary,” it is nevertheless true, as we declared in Abood v Hospital Ambulance Serv. (30 NY2d 295, 298), that effectuation of the Legislature’s purpose being the primary guide, "the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be *305 adhered to” (see, Loft Realty Co. v Aky Hat Corp., 123 Misc 2d 440). What petitioners seek by their construction is protection of commercial tenants who have separate residential space,[3] a purpose not within the Legislature’s 1964, 1977 or 1983 findings and declarations of purpose and not suggested by any of article '7-C’s provisions.
Finally, as the Appellate Division noted (104 AD2d, at p 226), Multiple Dwelling Law § 286 (13) provides that "[t]he applicability of the emergency tenant protection act of nineteen seventy-four to buildings occupied by residential tenants qualified for protection pursuant to this article shall be subject to a declaration of emergency by the local legislative body”, such a declaration was made by Resolution No. 369, dated April 26, 1983, of the New York City Council and, as already noted, ETPA § 5 (A) (11) (McKinney’s Uncons Laws of NY § 8625 [a] [11]) contains a primary residence requirement. Petitioners point to the specific references to the ETPA in subdivisions 3 and 7 of section 286 and the requirement of subdivision 3 that upon approval by the Loft Board after conversion as to compliance with required standards, "each residential occupant qualified for protection” shall be offered a residential lease subject to the eviction provisions of the ETPA "except to the extent the provisions of this article are inconsistent with such act.” From that language they argue that the City Council’s declaration should not be deemed to bring into play a primary residence requirement until after a tenant has received the benefits of the ETPA in the form of a residential lease. To permit eviction of a nonprimary resident prior to that time would, they contend, frustrate the intent of the Legislature to encourage prompt legalization of substandard housing.
The argument proves too much. The last sentence of section 281 (3) establishes that even if a portion of a building is an interim multiple dwelling, nonresidential space in the building is exempt from article 7-C. Thus, the Legislature intended to encourage conversion to conforming residential use only to the extent that there was in fact residential use of the particular space within the meaning of the article, which, as we have seen, required that the space be occupied as "the residence or home” of the occupant (§ 281 [1]). To construe the statute as not imposing on the property owner the obligation *306 of converting space which is used only incidentally or occasionally as housing by an occupant who has other housing can hardly be said to frustrate the Legislature’s intent to alleviate the acute shortage of housing. Moreover, petitioners’ construction would contravene the rule that a statute is to be construed so as to sustain its constitutionality (Loretto v Teleprompter Manhattan CATV Corp., 58 NY2d 143, 148; McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]), for it would raise a serious question concerning the relationship of the burden imposed upon the property owner to alleviation of the housing shortage which, by enactment of the article, the Legislature sought to achieve.
For all of the foregoing reasons, we conclude that Regulation J (1) (a) is valid and that the order of the Appellate Division should, therefore, be affirmed, with costs.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye, Alexander and Titone concur.
Order affirmed, with costs.

. The regulation, which is entitled Eviction of Residential Occupants, reads as follows:
"1. The landlord of an IMD registered with the Loft Board may bring eviction proceedings against the residential occupant of a unit in a court of competent jurisdiction on any of the following grounds:
"a. that the unit is not the primary residence of such residential occupant, except that where a lease or rental agreement is in effect between the landlord and such residential occupant, the landlord may not seek to evict such occupant until such lease or rental agreement is no longer in effect.”

, Sic. Probably should be paragraph 11.

. Indeed, petitioner Close has not one but two other residences, one in midtown Manhattan and the other in East Hampton.