■ In the Matter of LOWER MANHATTAN LOFT TENANTS et al., Respondents, v NEW YORK CITY LOFT BOARD et al., Appellants.—Judgment of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on or about October 26, 1988, which granted the petition and annulled as ultra vires New York City Loft Board Regulations (Relating to Harassment of

Occupants) § IV (A) (1); (B) (2) and directed the agency to promulgate regulations consistent with Multiple Dwelling Law § 286 (6), unanimously reversed, on the law, without costs, and the petition dismissed.

The sole issue presented in this case is whether regulations regarding tenant harassment issued by the New York City Loft Board are consistent with established law and, specifically, with section 286 (6) of article 7-C of the Multiple Dwelling Law (Loft Law). As a general consideration, "[T]he powers of an administrative agency may not be implied, but are created by language of clear import, admitting of no other reasonable construction * * *. Unless the delegation of power to vary or amend statutory provisions is explicitly conferred by the Legislature on an administrative board or official, the exercise of the power is ineffective" (*Matter of Durant v MVAIC*, 20 AD2d 242, 247, *mod on other grounds* 15 NY2d 408).

The statute at issue provides that a residential tenant in an interim multiple dwelling (IMD) covered by the Loft Law may sell "improvements to the unit made or purchased by him to an incoming tenant" provided he first offers them to the owner of the premises at their fair market value. (Multiple Dwelling Law § 286 [6].) Upon their purchase by the owner, the unit qualifies for exemption from rent regulation (with certain limitations). The statute continues, "The loft board shall establish rules and regulations regarding such sale of improvements which shall include provisions that such right to sell improvements may be exercised only once for each unit subject to this article, and that the opportunity for decontrol or market rentals shall not be available to an owner found guilty by the loft board of harassment of tenants" (Multiple Dwelling Law § 286 [6]).

Pursuant to this statutory authority, the Loft Board issued regulations with respect to tenant harassment. Section IV (A) (1) provides, "An owner found guilty of harassment shall not be entitled to decontrol of or market rental for any IMD unit for which a sale of improvements pursuant to Section 286 (6) of Article 7-C and the regulations promulgated pursuant thereto takes place in the IMD where the harassment occurred. This restriction shall apply to any sale of improvements that takes place on or after the date of the order containing the finding of harassment until such time as the order may be terminated in accordance with subsection IV (B)". Section IV (B) (1) of the regulations states, in relevant

part: "Where a landlord has been found guilty of harassment by the Loft Board, the current landlord may apply to the Loft Board pursuant to the Regulations for Internal Board Procedures, following the period of time specified in the order containing the finding of harassment, for an order terminating such finding. The order containing the finding of harassment shall specify the period of time, within a range of one to three years from the date of the order of harassment, during which the landlord shall be barred from applying for an order of termination. However, where a landlord has been convicted of a crime for conduct found by the Loft Board to constitute harassment, the current landlord may apply for an order of termination only after at least five years have passed since the date of the order of harassment." Section IV (B) (2) provides: "An order terminating a prior Loft Board finding of harassment shall apply prospectively only, and the owner shall not be entitled to the decontrol of or market rental for any residential unit for which a sale of improvements pursuant to Section 286 (6) of Article 7-C and the regulations promulgated pursuant thereto has taken place in the period from the date of the order finding harassment to the date of the order terminating such finding."

The IAS court found the regulatory provision permitting the agency to terminate an order of harassment to be at variance with the dictates of Multiple Dwelling Law § 286 (6). The court stated, "The language of the statute is clear and unambiguous, it explicitly mandates that the Loft Board regulations *shall* provide that the 'opportunity for decontrol or market rentals *shall not* be available to the owner found guilty * * * of harassment of tenants' (emphasis added). That unconditional prohibition may not be modified by administrative regulation."

On appeal, the Loft Board advances three arguments in support of its regulatory construction of the statute. It first contends that the regulations are not in conflict with the law. It takes the position that, because the statutory language does not provide that an owner shall "never" or "not ever" be provided the opportunity for decontrol or market rental, it may, in effect, rescind a finding of harassment against a particular owner. The statutory proscription that such opportunity "shall not" be available, however, is devoid of any inference that its duration is intended to be limited. As we recently stated the rule, "an administrative agency may not, in the exercise of its rule-making authority, promulgate a regulation out of harmony with the plain meaning of the

statutory language" *(Festa v Leshen,* 145 AD2d 49, 55). This argument must therefore be rejected.

The Loft Board also asserts that the construction of the statute reflected in its regulations is necessary to avoid a potential constitutional objection. The Board cites an unreported, oral decision by the United States District Court for the Southern District of New York for the proposition that its regulations "may not bind a subsequent owner to a finding of harassment against a previous owner" *(Baco Dev. 54th St. v City of New York,* 86 Civ 2440 [1987]). The statute, however, expressly precludes only "an owner found guilty by the loft board of harassment" from availing himself of the deregulation provision and does not bar subsequent owners from purchasing improvements from a tenant and deregulating that unit (if the improvements have not already been purchased by an incoming tenant). Moreover, the loss of the opportunity to deregulate a unit means only that it will remain subject to rent stabilization (Multiple Dwelling Law § 286), which does not constitute an unconstitutional interference with the use of property such as found in *Weissman v Fruchtman* (700 F Supp 746, 751 [SD NY 1988]), relied upon by the Board. Rather, rent regulation has been upheld as constitutional *(Felner v Office of Rent Control,* 27 NY2d 692; *Plaza Mgt. Co. v City Rent Agency,* 25 NY2d 630), and the continued regulation of the rent for a given unit will not operate to infringe the constitutional prerogatives of a subsequent owner.

Finally, the Board contends that it is a valid exercise of its discretion to construe the legislation according to its interpretation of the goals and purposes of the Loft Law and to harmonize its provisions with other statutes having similar goals and purposes. This argument has considerable merit. Both the Rent Stabilization Law and the Rent and Rehabilitation Law contain provisions regarding harassment which expressly provide that its duration may be limited (Administrative Code of City of New York § 26-511 [c] [10]; § 26-413 [b] [3] [a]). These provisions are reflected in administrative regulations which govern the operations of the Division of Housing and Community Renewal (9 NYCRR 2526.2 [d]; 2206.5 [c], respectively).

We note that the Loft law provides: "The functions of the local conciliation and appeals board of such municipality [viz., the Division of Housing and Community Renewal] regarding owners and tenants subject to rent regulation pursuant to this article shall be carried out by the loft board until such time as

provided otherwise by local law" (Multiple Dwelling Law § 286 [10]). It is not entirely clear whether findings of harassment by the Loft Board are intended to parallel the regulatory scheme of the Department of Housing and Community Renewal. Therefore, it is uncertain whether a finding of harassment is intended to be irrevocable, as petitioners assert, or merely temporal, as under the parallel regulatory schemes. Where such uncertainty as to legislative intent is manifest, the administrative agency's interpretation of the statute under which it functions will be accorded deference by the courts *(Matter of Howard v Wyman,* 28 NY2d 434, 438; *Matter of Lower Manhattan Loft 'Tenants v New York City Loft Bd.,* 104 AD2d 223, *affd* 66 NY2d 298).

The construction of the statute adopted by the agency has the salutary effect of imposing consistency in administrative actions upon similar findings. As the Court of Appeals stated it, "statutes in pari materia are to be construed together and 'as intended to fit into existing laws on the same subject unless a different purpose is clearly shown' " *(Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,* 66 NY2d 298, 304, *supra).* Concur—Sullivan, J. P., Carro, Wallach, Smith and Rubin, JJ.