■ BRYNHILDUR THORGEIRSDOTTIR, Appellant, v NEW YORK CITY LOFT BOARD, Respondent, and 126 FRONT STREET REALTY Co., Intervenor-Respondent. (Action No. 1.) In the Matter of 126 FRONT STREET REALTY Co., Appellant, v NEW YORK CITY LOFT BOARD, Respondent. (Action No. 2.) In the Matter of J&L REALTY COMPANY, Appellant, v NEW YORK CITY LOFT BOARD,

Respondent and DAVID STERRY et al., Intervenors-Respondents. (Action No. 3.) In the Matter of J&L REALTY COMPANY, Appellant, v NEW YORK CITY LOFT BOARD, Respondent. (Action No. 4.)—Order and judgment (one paper) of the Supreme Court, New York County (Herman Cahn, J.), entered August 15, 1989, which, *inter alia,* dismissed petitioner's application pursuant to CPLR article 78 to annul the determination of respondent New York City Loft Board (Board) dated March 3, 1988, modified, on the law, to the extent of (i) granting petitions of the intervening respondent landlords in consolidated actions Nos. 2, 3 and 4; (ii) reversing the order and judgment insofar as it contains findings of any rent overcharge and a direction for any cash refund to the tenants; (iii) declaring ultra vires and void those portions of New York City Loft Board Rules and Regulations (Relating to Loft Board Procedures [Loft Board Regulations]) § VII (A) and § III (E) which provide as a penalty for landlord's delayed filing with the Board reregulation of rentals until such filing is made; and otherwise affirmed, without costs.

Each of the three landlord-tenant transactions at the core of this appeal involves the situation contemplated by Multiple Dwelling Law § 286 (6) (the Loft Law) that when a departing residential tenant in a building covered by the Loft Law offers landlord, on a first refusal basis, the opportunity to purchase the fixtures and improvements installed by the tenant, and landlord accepts the offer followed by payment in full. The statutory incentive for landlord to make this purchase is his ensuing ability to lease the now-vacant unit at arm's length for a fair market value rent, unhindered by any controlling regulation. The statute provides in pertinent part as follows: "Upon purchase of such improvements by the owner, any unit subject to rent regulation solely by reason of this article and not receiving any benefits of real estate tax exemption or tax abatement, shall be exempted from the provisions of this article requiring rent regulation" (Multiple Dwelling Law § 286 [6]).

Thus, under the plain terms of the statute, deregulation of a residential unit occurs *"[u]pon purchase* of such improvements by the owner" and the unit *"shall be exempted* from the provisions of this article requiring rent regulation". (Emphasis added.) In our view, since purchase is the definitive event for deregulation, it was beyond the power of respondent Board to defer the effective impact of the decontrolling statute to such time as landlord filed a report of the sales transaction with the Board. We would further hold that the above-cited regula-

tions promulgated by the Board, which operate to extinguish the landlord's right to receive market rent prior to filing of a transactional report, constitute an illegal addendum to the statute which departs from its clear legislative intent.

Specifically, section VII (A) of the Loft Board Regulations states: *"within 30 days of the sale of improvements * * * the owner * * * shall file a Loft Board-approved Sale Record,* which provides the following information: address of IMD and location of unit; name and telephone number of incoming tenant; description of improvements conveyed; purchase price and purchaser; and rent. *No rights under Article 7-C,* enforceable by the Loft Board, *shall be effective until such filing has been made".* (Emphasis added.)

Loft Board Regulations § III (E) contains further reference to the filing requirement as a condition precedent to decontrol.

We conclude that the emphasized portions of this regulation and the tracking reference in section III (E) constitute an impermissible contraction of the statutory command that deregulation shall occur at purchase. It is well settled that an administrative agency may only promulgate rules to implement a law as enacted; it has no authority to fashion any rule out of harmony or in conflict with the statute *(Matter of Jones v Berman,* 37 NY2d 42, 53). The Loft Board has no authority to add additional conditions or to impose further qualifications to an entitlement or status declared by the statute *(Matter of Schenkman v Dole,* 148 AD2d 116, 120-121).

*Wittlin v Rent Control Div.* (89 AD2d 603, *affd for reasons stated at App Div* 58 NY2d 723) indicates the proper outcome of the case before us. In *Wittlin* a residential apartment had become eligible for decontrol when it was occupied by the owner, but the latter had failed to file a report of such decontrol with the appropriate administrative agency. At issue was whether such failure to file had the effect of reverting the apartment to controlled status. The Second Department ruled that the owner's act of taking occupancy itself effectuated decontrol, so that the failure to file a report in a timely fashion did not affect that status. *(See also, Matter of Wood v Metropolitan Hotel Indus. Stabilization Assn.,* 95 AD2d 560, where we held that a landlord's late enrollment in a rent stabilization association did not countenance, as an enforcement remedy, the reversion of the rent-stabilized housing units to rent control.)

All of the foregoing is not to say that the Loft Board cannot require the filing of a report of the improvements sale, and

the Board may even impose a reasonable monetary sanction for delay in filing or nonfiling. but what is interdicted is the imposition of a forfeiture on the landlord's right to collect the market rental at the time fixed in the statute, and not at a later time. The statute leaves no room for the Loft Board to enact a confiscation upon the landlord by inflicting the loss of the statutory benefit of his purchase from the outgoing tenant until he files, and providing a windfall for the incoming tenant as a means of enforcing the filing requirement. Indeed, we are all in agreement that the tenants are in no event entitled to such a windfall for the entire term of their respective leases; our only difference with the dissent concerns the period elapsing between the time of purchase and the time of landlord's filing.

We conclude by noting that the Board's filing requirement may well have a laudable data-gathering objective, but that it cannot be logically directed at eradicating the evil posited by the dissent of preventing more than one sales transaction. The landlord and his successors will never be induced to buy again what has already been purchased, and the tenant and his successors will have no title to the improvements to convey. Concur—Kupferman, J. P., Kassal and Wallach, JJ.

Asch and Rubin, JJ., dissent in part in a memorandum by Rubin, J., as follows: At issue on this appeal is whether it is within the authority of respondent New York City Loft Board to promulgate regulations requiring that an owner file a record of the sale of improvements before the unit in an interim multiple dwelling (IMD) in which the improvements are situated may be rented at the market rate pursuant to the provisions of section 286 (6) of article 7-C of the Multiple Dwelling Law (L 1982, ch 349, § 1 [Loft Law]).

Section 286 (6) of the Multiple Dwelling Law permits the tenant of a unit in an IMD to sell any improvements made by him in the unit to an incoming tenant, providing he first offers them for sale to the owner at their fair market value. In buildings with fewer than six units, purchase of tenant-made improvements by the owner exempts the unit from rent regulation, unless a real estate tax exemption or abatement (J-51 benefits) is received. Thus, in conformance with the general scheme of rent regulation, the statute provides a mechanism for exemption of IMDs with fewer than six units from rent regulation pursuant to the Emergency Tenant Protection Act of 1974 (McKinney's Uncons Laws of NY § 8621 et seq.; L 1974, ch 576, § 4) as provided by Multiple Dwelling Law § 286 (3). The right to sell improvements may

be exercised only once and, if the owner declines to purchase them from the outgoing tenant *(see, e.g., Gavish v Rapp,* 127 Misc 2d 255), the opportunity to decontrol the unit is forfeited.

Regarding the authority of respondent to promulgate applicable regulations, the statute provides: "The loft board shall establish rules and regulations regarding such sale of improvements which shall include provisions that such right to sell improvements may be exercised only once for each unit subject to this article, and that the opportunity for decontrol or market rentals shall not be available to an owner found guilty by the loft board of harassment of tenants" (Multiple Dwelling Law § 286 [6]). Pursuant to this statutory grant of authority, the Board issued New York City Loft Board Rules and Regulations (Relating to Loft Board Procedures [Loft Board Regulations]) § VII (A) which requires the owner, within 30 days of the sale of the improvements, to "file a Loft Board-approved Sale Record, which provides the following information: address of IMD and location of unit; name and telephone number of incoming tenant; description of improvements conveyed; purchase price and purchaser; and rent." The section concludes: "No rights under Article 7-C, enforceable by the Loft Board, shall be effective until such filing has been made." Section III (E) (1) of the Loft Board Regulations makes it clear that the right to exemption from rent regulation under article 7-C of the Multiple Dwelling Law is conditional upon "compliance with the filing provisions of these regulations".

Intervenor-respondent owner argues that deregulation is effective upon purchase by an owner of improvements in a unit subject to Loft Law rent regulation. Therefore, it contends that the provisions which condition the effectiveness of its rights in connection with deregulation upon the filing of a "Sale Record" are contrary to section 286 (6) of the Multiple Dwelling Law. Petitioner, to the contrary, contends that the Board exceeded its authority by permitting the owner to begin collecting an unregulated rent in the middle of her tenancy in the absence of a statutory mandate. Neither of these arguments is persuasive.

The Legislature has given the Loft Board broad authority to "establish rules and regulations regarding such sale of improvements", the express limitations being that the right to sell improvements can be exercised only once for each unit and that the right to decontrol a unit will not be available "to an owner found guilty by the loft board of harassment of tenants" (Multiple Dwelling Law § 286 [6]). We recently had occasion to construe the Board's authority to limit the dura-

tion of a finding of harassment, holding that it is consistent with the over-all legislative scheme although not expressly authorized by the Loft Law *(Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,* 157 AD2d 611). Here, by contrast, the regulations challenged are within the broad authority expressly delegated to the agency to implement and enforce the law.

In assessing the propriety of administrative regulations, the overriding consideration is whether the Legislature's purpose is effectuated thereby *(Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,* 66 NY2d 298, 304-305). The need to document the sale of improvements is evident from the statutory mandate that the right to sell improvements be exercised only once. Likewise, the necessity for an effective enforcement mechanism requires that the regulations provide sufficient incentive to encourage timely compliance with the filing provision. The Board's regulation is a rational response to the statutory mandate. By linking the owner's right to collect an unregulated rent to the compulsory filing, the rule discourages the practice of filing the Sale Record long after the fact, when it may be difficult or impossible to verify the information it contains. It serves to foreclose the subversion of express legislative intent which would result from a sale to an owner of improvements which he had previously declined to purchase. Thus, it effectuates the purpose of the statute by precluding the rental of a unit which is intended to remain subject to rent regulation (Multiple Dwelling Law § 286 [6]) at the market rate.

In assessing the propriety of an administrative regulation, the Court of Appeals has stated: "The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation 'is so lacking in reason for its promulgation that it is essentially arbitrary.' *(Matter of Marburg v Cole,* 286 NY 202, 212.) The interpretation given a statute by the administering agency 'if not irrational or unreasonable, should be upheld.' *(Matter of Howard v Wyman,* 28 NY2d 434, 438.) As was observed in *Mississippi Val. Barge Co. v United States* (292 US 282, 286-287), '[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body' " *(Ostrer v Schenck,* 41 NY2d 782, 786). The challenged regulation is entirely reasonable and in conformance with the intent of the statute *(Matter of Association of Commercial Prop. Owners v New York City Loft Bd.,* 118 AD2d 312, 317, *affd* 71 NY2d 915).

As to petitioner tenant's contention that the Board exceeded its authority in permitting an increased rent to be charged during the term of her lease, it should be noted that she has sustained no prejudice, having entered into the lease at the market rate. The reduction in rent to the previous, stabilized rate from the inception of the lease until the owner complied with the Board's filing regulations represents merely a regulatory abatement of rent and not a modification of the terms of the lease by operation of law. I have no difficulty in harmonizing the challenged regulation with the statute by ruling that, although deregulation of an IMD unit is achieved by purchase of improvements therein pursuant to Multiple Dwelling Law § 286 (6), the right of an owner to collect a market rent for that unit does not attach until he complies with the filing provision of Loft Board Regulations § VII (A). The requirement that an owner file a record of sale of improvements is hardly onerous, and the extent of any loss occasioned by its late filing is entirely within the control of the owner.

This court applied a similarly flexible approach to the construction of regulatory authority in *Matter of Wood v Metropolitan Hotel Indus. Stabilization Assn.* (95 AD2d 560), curiously relied upon by the majority. There we upheld the Association's approval of an owner's application for late enrollment despite the express language of the statute, which mandates reversion to rent-controlled status for affected dwelling units, and despite the absence of any statutory grant of authority to the Association to adopt procedures for late enrollment. In the *Wood* case, we stated: "Judicious effectuation of the statute's intent precludes an overly rigid interpretation of its enrollment provisions" (95 AD2d 560, 565, *supra).*

*Wittlin v Rent Control Div.* (89 AD2d 603, *affd* 58 NY2d 723), which is suggested as being dispositive of the instant matter, is likewise distinguishable. First, it is merely a restatement of the position taken by the Appellate Division, Second Department, in *Forbes v Lomazow* (22 AD2d 800), a case decided under section 2 [2-a] of the Emergency Housing Rent Control Law (L 1946, ch 274, as amended) which was superceded in the City of New York in 1962 by the City Rent and Rehabilitation Law (Local Laws, 1962, No. 20 of City of New York; Administrative Code of City of New York § 26-401 *et seq.)* adopted by the New York City Counsel pursuant to the authority granted by section 5 of the Local Emergency Housing Rent Control Act (L 1962, ch 21, § 1, as amended; McKinney's Uncons Laws of NY § 8605). Second, *Wittlin (supra)* is distinguishable in that decontrol of the subject dwelling unit

would have been effectively precluded, not merely postponed, by the agency ruling challenged therein. As such, the determination cannot be viewed as a rational, measured approach to the enforcement of a filing requirement, but instead constitutes an administrative denial of a right granted by statute. Finally, *Wittlin (supra)* involves a construction of the agency's general powers and not an interpretation of an express grant of authority by the Legislature to enact regulations to give effect to a statutory mandate.

Accordingly, I would affirm the order of Supreme Court and confirm the agency's determination.