■ In the Matter of CLAUDIA I. HENSCHKE, Respondent, v STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant, and EDIE COWAN, Intervenor-Respondent.—Judgment of the Supreme Court, New York County (Myriam Altman, J.), entered March 21, 1990, which granted the petition pursuant to CPLR article 78, annulled the determination of respondent denying her application for certificates of eviction for two rent-controlled apartments in the subject premises, and directed respondent to issue certificates of eviction, reversed, on the law, without costs, the judgment vacated, the determination confirmed, and the petition dismissed.

The question presented on this appeal is the interpretation to be placed upon section 2204.9 (a) (1) of the New York City Rent and Eviction Regulations (9 NYCRR) which provides for issuance of a certificate of eviction to a landlord to withdraw from the housing market premises he "requires * * * for his own immediate use in connection with a business".

9 NYCRR 2204.9 states, in pertinent part:

"Withdrawal of occupied housing accommodations from rental market.

"(a) A certificate shall be issued where the landlord establishes that he seeks in good faith permanently to withdraw occupied housing accommodations from both the housing and nonhousing markets, without any intent to rent or sell all or any part of the land or structure, and:

"(1) that he requires the entire structure containing the housing accommodations or the land for his own immediate use in connection with a business which, at the time of the filing of the application for a certificate of eviction, he owns and operates in the immediate vicinity of the property in question".

The issue is whether, as respondent agency contends, the

landlord is required to demonstrate that use of the *entire* premises—whether residential or non-residential—is a matter of business *necessity* or whether, as petitioner landlord contends, she is merely required to establish that such use is a matter of business convenience.

Petitioner, a radiologist, owns a five-story building in which she lives and works. The first floor contains her medical office, the second floor a living and dining area, the third and fourth floors residential space for petitioner's mother (herself a radiation oncologist) and petitioner, respectively, and the fifth floor two rent-controlled apartments. Petitioner sought to permanently withdraw the fifth-floor apartments from the housing and non-housing rental markets for the purpose of utilizing the space for laboratory, computer research, storage and archival purposes. Respondent, in affirming the decision of the District Rent Administrator, found that while the proposed use of the fifth floor would be a convenience to petitioner, she had failed to demonstrate why, as a matter of business necessity, either she or her mother needed to reside in the building housing the medical practice.

Supreme Court granted the petition, annulled respondent's determination and directed that a certificate of eviction be issued with respect to the two apartments. The court noted that respondent had not found any lack of good faith by petitioner in seeking to withdraw the units from the rental market and held that, by insisting that petitioner demonstrate a business necessity rather than mere convenience, the agency had exceeded its authority by "engrafting" an additional requirement onto the Rent and Eviction Regulations.

It is abundantly clear that the language employed in this regulation is subject to more than one interpretation and that the meaning ascribed to it by respondent does not involve "engrafting to the regulation a requirement of 'business necessity' ", to use Supreme Court's words (*see, in this regard, Thorgeirsdottir v New York City Loft Bd.*, 161 AD2d 337, *affd* 77 NY2d 951). What is meant by the regulatory prescription that a landlord establish "that he *requires* the *entire* structure * * * for his own immediate use *in connection with* a business" (emphasis added) is sufficiently vague to allow administrative interpretation and, as Supreme Court appropriately observed: "The interpretation and construction placed upon a statute and implementing regulations by the agency responsible for administering them is entitled to great weight (*[Matter of] Howard v Wyman*, 28 NY2d 434, 438)."

Respondent has not argued, as it might have, that residen-

tial use of business premises is, per se, in contravention of its regulation, only that some legitimate business necessity must be demonstrated. Therefore, it cannot be said that respondent's interpretation is categorically "unreasonable", as Supreme Court determined. Concur—Ellerin, Wallach and Rubin, JJ.

Carro, J. P., and Kupferman, J., dissent in a memorandum by Carro, J. P., as follows: Petitioner Dr. Claudia I. Henschke is a Board Certified radiologist specializing in the diagnosis and treatment of cancer patients. She owns a five-story building located at 37 West 69th Street in Manhattan (the premises). The first floor has been converted to an office for petitioner's medical practice. The second floor contains her living room and dining room. The third floor is occupied by her mother, Dr. Gisela Henschke, who is a Board Certified radiation oncologist with over 30 years' experience in radiation therapy and cancer care, and extensive experience in hospital emergency situations and outpatient care. The fourth floor is petitioner's residence. The fifth floor contains two rent-controlled apartments, 5F and 5R. Petitioner sought permission to evict the occupants of those apartments and to withdraw them from the rental market in order to use the fifth floor for laboratory, computer, research and storage space.

Dr. Henschke asserted that she required the use of the entire premises as a matter of necessity rather than of mere convenience for her medical practice. In her moving papers, she described medical complications which may arise in the course of her treatment of patients and why the presence of her mother is required on the site at all times to assist her and to help care for patients.

Dr. Henschke filed an application with the respondent State Division of Housing and Community Renewal (DHCR) for permission to evict the tenants of apartments 5F and 5R, and withdraw the apartments permanently from the rental market, in order to expand her medical practice as described above. On February 26, 1988, the District Rent Administrator of DHCR denied Dr. Henschke's application on the ground that she failed to satisfy 9 NYCRR 2204.9 (a) (1) which provides for the issuance of a certificate authorizing a landlord to evict tenants as follows:

"(a) A certificate [of eviction] shall be issued where the landlord establishes that he seeks in good faith permanently to withdraw occupied housing accommodations from both the housing and nonhousing markets, without any intent to rent or sell all or any part of the land or structure, and:

"(1) that he requires the entire structure containing the housing accommodations or the land for his own immediate use in connection with a business which, at the time of the filing of the application for a certificate of eviction, he owns and operates in the immediate vicinity of the property in question".

The stated basis for the DHCR's denial of petitioner's application was that petitioner and her mother were housed on the third and fourth floors of the premises. Dr. Henschke filed a petition for administrative review (PAR) of the Administrator's order arguing that her residential use of a portion of the building did not prevent her from withdrawing the entire structure from the rental market for use in connection with her medical practice.

On October 19, 1988, a Deputy Commissioner of the DHCR issued an order denying Dr. Henschke's PAR on the ground that Dr. Henschke and her mother resided in the building. In his order, the Deputy Commissioner ruled as follows: "While the landlord may wish to reside in the same building as her proposed medical practice, there is not [sic] business necessity for her mother to be housed there as well. The mere fact that the entire structure is not required for the landlord's business warrants a finding that the requirements of Section 2204.9 (a) (1) have not been met."

On December 15, 1988, Dr. Henschke filed a Petition with the Supreme Court, New York County, pursuant to CPLR article 78, in which she sought to annul the Deputy Commissioner's order on the grounds that it was arbitrary and capricious and in violation of law. The DHCR moved to remit the proceeding for further consideration, which was granted. On June 29, 1989, the Commissioner issued an Opinion and Order denying Dr. Henschke's PAR. In his Opinion and Order the Commissioner stated, in pertinent part: "Since Section 2204.9 (a) requires use of the entire structure for a business, a landlord who seeks a certificate of eviction pursuant to this section for an apartment in a building in which the landlord also resides, must establish that the residential use is a matter of business necessity and not merely a convenience * * * No reason has been shown why the landlord cannot live in a separate location from her practice and still attend to the kinds of emergencies she describes * * * As long as patients will not be staying in the subject building, there is no reason

why the landlord cannot travel to her office to meet her patients since her patients will have to travel there as well".[1]

Following this determination, Dr. Henschke commenced the instant CPLR article 78 proceeding. The IAS court granted the petition, finding that the Commissioner exceeded his authority in engrafting to the regulation a requirement of " 'business necessity' " for Dr. Henschke and her mother to reside in the premises where her medical practice is located, and requiring Dr. Henschke to demonstrate that she " 'cannot live in a separate location from her practice and still attend to * * * emergencies' ". The court thus concluded that "[t]hese additional requirements—not found in the statute or regulations—would totally eviscerate the provision as to render it meaningless."

It would appear that the IAS court's analysis was correct, at least insofar as the petitioner herein is concerned. We are mindful that "DHCR's interpretation of the statutes it administers, if not unreasonable or irrational, is entitled to deference" *(Matter of Salvati v Eimicke,* 72 NY2d 784, 791). Nevertheless, we do not believe the regulation can reasonably be construed to require Dr. Henschke or her mother to move out of their own residences, in premises owned by Dr. Henschke, in order to evict the tenants under the circumstances presented herein. If the Commissioner's construction of the regulation were to be accepted (i.e. that the landlord "must establish that [her] residential use is a matter of business necessity"), it would be difficult to imagine instances where a landlord residing in premises that are used for a medical practice or any other "business", could successfully invoke 9 NYCRR 2204.9 (a) (1) to obtain a certificate of eviction.

The DHCR argues that there is one fact pattern which would permit Dr. Henschke to recover rent controlled units for business use even though she resides in the premises, and points for illustration to that portion of the Commissioner's Order and Opinion which states: "The type of practice the landlord describes does not encompass a residential facility in which patients would be housed for medical reasons which might justify a need for round the clock medical care." If that were the case, Dr. Henschke would be operating a "hospital" as defined by Public Health Law § 2801 (1), and she could then

---

1. The Commissioner's analysis completely ignores the fact that if Dr. Henschke were separated from the medical records of her patients, her ability to render emergency telephone consultations would be seriously impaired.

rely upon 9 NYCRR 2204.9 (a) (3), which allows a landlord such as a hospital, public institution, school etc. to evict rent controlled tenants if the landlord "requires the housing accommodations or the land, *or any part thereof,* for its own immediate use" (emphasis added). *(Matter of Whitney Museum of Am. Art [New York State Div. of Hous. & Community Renewal],* 139 AD2d 444, *affd* 73 NY2d 938.) The only rational interpretation of section 2204.9 (a) (1) in circumstances similar to those presented herein, is one that would allow a landlord who resides in a building in which she operates a business, to evict rent controlled tenants if she demonstrates that she requires the entire structure, *apart from her residence,* for her own immediate use in connection with the business.

I must add that even if we were to accept as rational the DHCR's construction of the regulation, Dr. Claudia I. Henschke has nevertheless clearly established that her and her mother's residences in the premises were required in connection with the medical practice at the premises. She set forth the following facts in her verified petition with respect to the necessity of their residential presence in the premises:

"Petitioner's mother, Dr. Gisela Henschke, is a Board-certified radiation oncologist with over thirty years of experience in radiation therapy and cancer care. She has extensive experience in the hospital setting, emergency situations and in the outpatient community setting.

"In order for the Petitioner's medical practice and office to function, a doctor with Dr. Gisela Henschke's expertise in a broad range of cancer care problems is vital. Although during the daytime there will be multiple consultants available each with a particular area of experience, in the evening, a person with a broader scope of knowledge in several cancer related areas will be necessary. Emergencies that require immediate attention can arise at any time involving many different organ systems of the body.

"Some examples of emergencies for which someone such as Dr. Gisela Henschke is needed are as follows:

"1. People can rapidly develop numbness and paralysis for many reasons including tumor spread to the spinal cord. This is a critical clinical evaluation best done by an experienced cancer care specialist, not an emergency room resident. Proper diagnosis can lead to treatment to prevent permanent paralysis.

"2. People who have received radiation to their chest may experience shortness of breath which may develop rapidly and

cause respiratory arrest. The importance of being an experienced cancer care specialist is in knowing the cause of the problem. It could be due to heart failure, a reaction to drugs, or an adverse response to radiation therapy. Each requires a different treatment and it requires an experienced physician to determine the cause.

"3. A patient may develop bleeding from a surgical site in a colostomy or in other internal organs. Again an accurate clinical evaluation is necessary to determine if infections or abscesses are present, to accurately locate the source of the bleeding, whether it is related to radiation burn or erosion of blood vessels. Each situation requires a different treatment, some may require hospitalization.

"4. Patients with cancer often suffer with very serious pain. This can be due to numerous causes, including metastatic spread of cancer to other organs. It may be related to a patient's surgery, and sometimes the cause may be from a non specific etiology 'a para neoplastic syndrome.' Each of the above situations needs optimum clinical evaluation to choose the appropriate medication and treatment.

"5. Another vital area where experience is a necessity is in helping patients cope with their emotional difficulties. There is nothing more anxiety provoking and depressing than coping with a terminal illness. The treatments are often excruciatingly painful and often without guarantee for success. Often times patients need to talk with someone frequently during the night [when?] they feel most isolated, and there is no substitute for someone who has had vast experience with these types of patients and who truly understands their particular problems.

"This list is by no means exhaustive, but merely a representative sample of the types of emergencies for which Dr. Gisela Henschke's services may be required at any time.

"Petitioner's mother's expertise in the above mentioned areas is greater than the petitioner's and was considered absolutely necessary to the function of this office when it was set up. The petitioner's medical office, as intended, cannot function effectively without Dr. Gisela Henschke's presence on site at all times, thus requiring her residence at the subject premises for the same reasons as requires the petitioner's on site residence, which the respondent DHCR has already approved in the PAR Order below.

"Additionally, the petitioner, as a doctor, is on call 24 hours a day for any emergency situation that may arise. It is

physically impossible for any one individual to be 'at the ready' 24 hours a day, 365 days a year. Therefore, the petitioner's physician mother residing in the same premises where her medical practice is located not only facilitates that medical practice, but becomes a necessary and integral part of the medical practice and is interwoven together such that in today's world, a physician residing in the same premises where her medical practice offices are located becomes in effect one unit devoted to the medical practice. The partial residential usage of the subject premises of both doctors is clearly incidental and facilitatory to the business medical use."[2]

The DHCR did not dispute this detailed showing of necessity, but rather accepted it as true, while incredibly concluding that Dr. Claudia I. Henschke "has proffered many arguments as to why she and her mother must reside in the same building as the proposed medical practice *but none of these arguments are sufficient to warrant granting the petition * * * No reason has been shown why the landlord cannot live in a separate location from her practice and still attend to the kinds of emergencies she describes (sudden numbness or paralysis, shortness of breath, bleeding, serious pain, emotional difficulties)." (Emphasis added.) The DHCR's conclusion should be set aside as being arbitrary and capricious.

According to the majority, the regulation only requires that petitioner demonstrate "some legitimate business necessity" for her and her mother's residential use of the premises. That this test has been amply satisfied by the petitioner is manifest, and constitutes an entirely independent basis for affirming the judgment below. The majority ignores this issue completely.

Accordingly, the judgment of the Supreme Court, New York County (Myriam J. Altman, J.), entered March 21, 1990, which granted the petitioner's CPLR article 78 petition, and remanded the matter to respondent DHCR for issuance of certificates of eviction, should be affirmed.

■ ELAINE RUIZ, Appellant, v PUERTO RICAN ASSOCIATION

---

2. The affidavit of David Yankelevitz, M.D., a Board Certified diagnostic radiologist and specialist in Nuclear Medicine, confirmed Dr. Henschke's assertions in all essential respects. In addition he pointed out that there was no adequate facility in the New York City area to care for the complex problems of cancer patients during evening hours, and that hospital emergency rooms staffed by residents with little experience in the treatment of advanced cancer are a poor substitute for the type of consultation and treatment that would be available if Dr. Henschke and her mother were able to expand their medical facility as planned.